(29 Misc. Rep. 574.)

### PEOPLE v. MOORE.

(Court of General Sessions, New York County. November, 1899.)

1. CRIMINAL LAW—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

Where, upon the trial, the defendant fails to deny the statements of certain witnesses, which at the time he knew to be untrue, he cannot be heard to say, upon motion for new trial on the ground of newly-discovered evidence, that he had a right to waive his legal right in that respect, and that such waiver could not be taken to his prejudice.

2. SAME.

Defendant was jointly indicted with his wife, and demanded a separate trial, at which he was convicted. In support of a motion for new trial for newly-discovered evidence he presented an affidavit of his wife, which showed that the proposed evidence was within the knowledge of both defendant and his wife at the time of such trial. *Held*, that the fact that it was not deemed prudent by defendant to call his wife as a witness for him while awaiting her own trial cannot operate as a moving cause for new trial.

3. SAME.

A new trial on the ground of newly-discovered evidence will not be granted where the proposed evidence is merely hearsay.

4. SAME.

Code Cr. Proc. § 465, providing that on applications for new trial on the ground of newly-discovered evidence the court can compel the personal appearance of parties for the purpose of personal examination and cross-examination under oath "upon the contents of the affidavits which they subscribed," does not empower a court to compel the appearance of persons for examination who have not sworn to affidavits presented on the motion for new trial.

5. SAME.

Evidence is not newly-discovered where it appears that the moving party had knowledge of such evidence at the time of the trial, and that he neglected to call a witness, who was in court, whom he knew could have testified to it.

William A. E. Moore, convicted of robbery, moved for new trial. Denied.

Abraham Levy, for the motion.

Asa Bird Gardiner, Dist. Atty., opposed.

GOFF, R. The defendant was convicted of the crime of robbery in the first degree, and judgment was pronounced against him. He now moves for a new trial on the ground that upon another trial he can produce evidence such as, if before received, would probably have changed the verdict. The motion is made under section 465 of the Code of Criminal Procedure, which, so far as applicable, reads:

"The court in which a trial has been had upon an issue of fact has power to grant a new trial when a verdict has been rendered against the defendant, by which his substantial rights have been prejudiced * * *: When it is made to appear, by affidavit, that upon another trial, the defendant can produce evi-

dence such as (1) if before received, would probably have changed the verdict; (2) if such evidence has been discovered since the trial; (3) is not cumulative; (4) and the failure to produce it on the trial was not owing to want of diligence."

Power to grant a new trial can only be exercised when the four requirements of the statute are concurrently fulfilled to the satisfaction of the court, and these requirements are conjointly the test of efficiency which must be applied to the affidavits presented. The defendant sets forth in his affidavit that on the trial Martin Mahon, the complaining witness, testified that on the evening of the 4th of November, 1898, when he went to the reception room of the Metropole Hotel to meet Fayne Moore, he saw her talking, through a barred window opening into another apartment, with a man whom he then did not know; but afterwards, in the apartments of Fayne Moore, where the robbery was committed, he recognized the defendant as the man whom he had seen at the barred window; and that Mahon further testified that at the time of the robbery he delivered to the defendant two certain promissory notes of $2,500 each, and that on the following day the defendant was present at the Grenoble Hotel, with his attorney, Bernard J. Douras, Esq., to whom he said he had given the promissory notes. It is claimed by the defendant that this evidence was pertinent, and had the effect of influencing the jury to his great prejudice; that in all respects it is untrue; that the newly-discovered evidence was wholly unknown to him at the time of the trial; and that the failure to produce it at that time was not owing to any want of diligence or exertion on his part. There are two points made: First, that in relation to the incident at the window in the Metropole Hotel; and, second, that in relation to the lawyer's presence at the Grenoble Hotel. In support of the first point two affidavits are submitted, one by Fayne Moore, and the other by Gus C. Roeder. Fayne Moore swears that she was not in conversation with the defendant at the window in the Metropole Hotel, as testified by Mahon; that she knew the persons to whom she spoke at the window, but at the time of the trial she was unable to recall their names; that after the trial she made diligent efforts to learn their names, and that she was unsuccessful up to a very short time ago. She then gives the names of the two men with whom she conversed at the window. She further swears that while in company with Mr. Roeder she met one of these men with whom she had conversed at the window, and he "admitted and stated that Martin Mahon was all wrong when he stated upon the trial that she was speaking to the defendant"; that Mr. Roeder thereupon stated that, since he was one of the men who spoke to Mrs. Moore at the window, it was his duty to make an affidavit to that fact. He answered that he did not care to be mixed up in the affair, and promised to give an answer within three days as to whether or not he would make an affidavit. No answer has been received from him. Mr. Roeder sets forth, in his affidavit, that in and about the month of April, 1899, he became possessed of information that the testimony of Mahon as to Fayne Moore being in conversation with the defendant at the window in the Metropole

Hotel was untrue; that the defendant was mistaken for the men mentioned with whom she was in conversation at the window, and that he "located and ascertained and states as a fact" that the men who were in conversation with Fayne Moore at the barred window in the Metropole Hotel, on the occasion in question, were those whose names are given. He further states that he, in company with Fayne Moore, arranged to meet one of the men named, with whom he was unacquainted; that in the conversation which followed he asked him "whether he remembers reading in the newspapers that Martin Mahon testified on the trial that he saw Mrs. Fayne Moore talking to the defendant at the barred window; that he must recall having read in the same papers that Mrs. Moore, on her trial, swore that at the time she was talking to two men, but could not remember their names; that he then acknowledged that himself and another man were the persons who were in conversation with Mrs. Moore at the window; that Mahon was all wrong; that the other man was out of town on the road, and he did not know when he would return to the city; that he was unwilling to make affidavit, and have his name mixed up in an affair of this kind, but that he would give a definite answer in three days." No answer was received from him. The affiant goes on to state that he has learned that the other man has acknowledged and stated to several persons that he was at the window, talking to Mrs. Moore, and that Mahon's testimony respecting that was false.

Do these affidavits possess the essentials required by the Code of Criminal Procedure? The defendant was jointly indicted with his wife, Fayne Moore. They were confined at the same time in the city prison, and they were defended by the same counsel on their respective trials. A separate trial was demanded by the defendant, which took place on the —————— day of November, 1898, and resulted in a disagreement of the jury. The second trial was had on the 12th day of December, 1898, and resulted in a conviction. On each of these trials the defendant heard the testimony as to his presence at the window. He then knew whether or not it was true. It was his privilege to take the witness stand, and deny it; but he did not choose to do so. Of course, it may be urged that he prudently waived his legal right, and that waiver should not be taken to his prejudice. That is true so far as the trial was concerned, but, when he makes a motion for a new trial on the ground of newly-discovered evidence which he could not with diligence have produced on the trial, he cannot be heard to say that for prudential reasons he did not call a witness (himself) who could have testified to the fact. When the discretion of the court is appealed to, it is necessary and proper that every representation made should be closely examined, and every reason advanced be subjected to the test of truth and good faith. When the evidence on this point was given on the first trial it must be presumed that the astute counsel for the defendant perceived its force, and, having the confidence of the defendant, and also his other client, the co-defendant, it must be further presumed that he diligently used every reasonable effort to produce testimony at the second trial to contradict that which his clients

now state they knew at that time to be untrue. Fayne Moore was not only the co-defendant, but the wife, of the man on trial. She was in the city prison, and could have been produced in court at very short notice. She knew to whom she was talking at the window. Why was she not called to the witness stand? Again, it may be urged that it was not deemed prudent to call her as a witness for her husband while awaiting her own trial, but prudence and expediency at the trial cannot now operate as a moving cause for a new trial, when it is manifest that there was knowledge of the alleged facts, and opportunity for two persons to give testimony of it. Except the names of the men to whom she was talking at the window, there is nothing in the affidavit of Fayne Moore that she did not know at the trial. The fact that she was not talking to her husband, but to some other men, was known to her, and her inability to remember their names would have been a proper subject for cross-examination. The jury might have believed her, but she did not give them the opportunity. She fails to state whether her acquaintance with these men was casual or intimate, or any other fact or circumstance which would tend to explain or account for her failure of memory; and she also fails to state how or by what means her memory became refreshed. Mr. Roeder's affidavit has no probative force whatever. He has no personal knowledge of what took place at the window. He was not there, and all that he states is mere hearsay. The admission to him by some man, who is not before the court, and who refused to make affidavit that he and another man were in conversation with Fayne Moore at the window, and that Mahon was all wrong, is of no value as evidence, and could not be admitted on a new trial, if granted. That the moving affidavits must present evidence which will be competent and admissible upon a new trial, if granted, is a rule so firmly established by authority as to preclude discussion. There should be an affidavit of the witnesses who will give new evidence that they are ready to swear to the facts claimed to be newly-discovered (Adams v. Bush, 1 Abb. Dec. 7; Id., 2 Abb. Prac. [N. S.] 104), and an affidavit that the witnesses told the party that they would so swear is not enough (Shumway v. Fowler, 4 Johns. 425; Roberts v. Bank [Sup.] 14 N. Y. Supp. 433). A new trial on the ground of newly-discovered evidence will not be granted where the affidavits of the proposed witnesses do not state that the affiants know the matters therein set forth of their own knowledge. Hecla Powder Co. v. Sigua Iron Co., 1 App. Div. 371, 37 N. Y. Supp. 149.

On the argument of this motion the learned counsel for the defendant urged that the persons named in Mr. Roeder's affidavit be sent for, and examined by the court. The provision of said section 465 of the Code of Criminal Procedure is:

"The court in such cases can, however, compel the personal appearance of the affiants before it for the purposes of their personal examination and cross-examination, under oath, upon the contents of the affidavits which they subscribed."

These persons have not subscribed to any affidavits, and they cannot be examined under oath touching matters to which they have

not sworn. Under this provision the court has not the power to compel the appearance of persons for examination who have not sworn to affidavits presented on the motion for a new trial.

In support of the second point there is submitted an affidavit by Mr. Douras, a lawyer, in which he denies that he was at the Hotel Grenoble the day after the robbery, and also that the defendant told him he had received promissory notes from Mr. Mahon, or gave them to him for collection. He also states that he is a practicing lawyer, with offices in this city; that he was instructed by the defendant to prepare the necessary papers in an action for divorce; that he was subpoenaed by the prosecution as a witness upon the trial of the defendant, but was not called, and that he attended court during the trial upon several occasions. It is not necessary to pass upon the materiality of the proposed testimony or its admissibility upon a new trial. It is sufficient to point out the self-evident fact that it is not newly-discovered evidence, that it was known to the defendant and Mr. Douras at the time of the trial, and that he was actually in court under subpoena as a witness during the trial. It is clear, from this affidavit, that the defendant had knowledge of the proposed evidence at the time of the trial, and that he neglected to call a witness, who was in court, whom he knew could have testified to it.

In the consideration of this motion I have recognized fully its importance to the defendant, and have carefully and anxiously examined every proposition advanced in his behalf to the end that justice might be promoted by granting a new trial, if there appeared any reasonable and just grounds to warrant such action. But the exercise of even a liberal discretion could not find justification under the rules of law defined by statute and established by precedent in granting a new trial on the affidavits presented. In the administration of the criminal law the end to be attained is justice. An essential to that end is certainty, and the solemn judgment of a court, rendered upon the verdict of a jury after a trial, in which the defendant had opportunity to present all his evidence, must not be disturbed unless it be clearly made to appear that since the trial there has been discovered competent, material, credible evidence, which, if before received, would probably have changed the verdict, which could not have been discovered before the trial by the exercise of due diligence, and which, on a new trial, would probably produce a different result from the former. The affidavits submitted do not comply with these requirements, and the motion must be denied.

Motion denied.