MISSOURI-KANSAS PIPE LINE COMPANY,

Petitioner Below, Appellant,

*vs.*

DUPUY G. WARRICK,

Respondent Below, Appellee.

In the Matter of the Petition of MISSOURI-KANSAS PIPE LINE COMPANY for Leave to Reopen Hearing on Application of DUPUY G. WARRICK for Allowance of Compensation and Expenses, or, in the Alternative, for Leave to File a Bill of Review Pertaining to said Application, and Upon an Application of said MISSOURI-KANSAS PIPE LINE COMPANY Filed on the 3rd day of November, A. D. 1937, for Leave to Take Depositions in Support of the Petition Aforesaid.

*Supreme Court, On Appeal, October 11, 1938.*

216

LAYTON, C. J., and HARRINGTON, RICHARDS, RODNEY, and SPEAKMAN, JJ., sitting.

*Arthur G. Logan*, of the firm of Marvel, Morford, Ward & Logan, for appellant.

*Reuben Satterthwaite, Jr.*, and *Caleb S. Layton*, for appellee.

LAYTON, C. J., delivering the opinion of the Court:

The application of Warrick for an allowance for his services and expenses was fully heard by the Chancellor, and his order was in the nature of a decretal order. *Allied Chem. & Dye Corp. v. Steel & Tube Co.*, 14 *Del. Ch.* 368, 127 *A.* 414. The rule of Chancery practice is that there can be no re-hearing of a decree or order of the court after it has been enrolled. Until enrollment, it is not a record of the court, and may be changed on a re-hearing. *Daniels' Ch. Pr.*, (6*th Am. Ed.*) 1475. After enrollment, the remedy is by bill of review. *Cochran v. Couper*, 2 *Del. Ch.* 27. *Chancery Rule No.* 90 provides that a final decree shall be considered enrolled and signed on the record from and after the expiration of thirty days from its date, and shall be open to re-hearing or correction for clerical mistakes or accidental omissions, upon petition and proper cause shown within that period; and thereafter, may be reviewed only by a bill of review or appeal. This rule recognizes the long settled Chancery practice. The order making the allowance was entered on December 23, 1936. No appeal was taken within six months, as required by *Section* 28, *Art. IV* of the *Constitution;* and, as the order is deemed to be enrolled at the expiration of thirty days from its date, it is

manifest that it was not subject to attack by a petition for a re-hearing.

The alernative prayer of the petition was for leave to file a bill of review on the ground of newly discovered evidence; and this demands a brief statement of the principles and rules governing the court in such cases.

Leave of court must first be obtained. *Crites v. Photometric Products Corp.*, 20 *Del. Ch.* 10, 169 *A.* 164. The proceeding is by petition or motion accompanied, generally, by supporting affidavits, and the opposing party must be served with notice of the application, this to afford him whose case is sought to be re-litigated an opportunity to show that, in the circumstances, the court's discretion ought not to be favorably exercised. 2 *Daniel, supra,* 1578. Accordingly, counter affidavits are admissible; not to decide absolutely the truth of the statements of the petition, but to explain the nature of the alleged evidence. 3 *Ency. Pl. & Pr.,* 588; *Fletcher, Equity Pl. & Pr.,* § 937; *Dexter v. Arnold, Fed. Cas. No.* 3,856, 5 *Mason* 303.

There is no essential difference in the foundations of the application, whether it be in a court of equity for leave to file a bill of review on the ground of newly discovered evidence, or in a court of law for a new trial on the same ground. 21 *C. J.* 755; *Feinberg v. Feinberg,* 70 *N. J. Eq.* 420, 62 *A.* 562. In either forum the application is not granted as of right, but rests in the sound, reasonable and legal discretion of the court. In either forum, except in unusual circumstances, the court acts upon a showing of legal evidence, relative, material and sufficient. The language of the courts expressive of the rules governing such applications, whether coming from an equity or from a law court, is essentially the same.

New trials on the ground of newly discovered evidence are not favored. A litigant very properly is required to make the fullest possible preparation of his case before

trial. *Christie v. Petrullo,* 101 *N. J. L.* 492, 128 *A.* 853. Acting under the sting of defeat, the loser is strongly tempted to fabricate the necessary showing. Frequently the disappointment over the result spurs the applicant to that diligence which he should have exercised before trial. Friends are importuned, and affidavits are secured of facts and statements which, if not altogether false, or the merest hearsay, are only of a cumulative or impeaching character, the efficacy of which to produce a different result being entirely speculative. Such applications, whether in a court of law or in a court of equity, are entertained with reluctance and granted with caution, not only because of the danger of perjury, but also because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect to defeat an adverse verdict. 20 *R. C. L.* 289; 10 *R. C. L.* 574.

To avoid these evils, of necessity, courts, from very early times, have formulated and applied rules governing such applications. The applicant is required to show that the newly discovered evidence has come to his knowledge since the trial; that it could not, in the exercise of reasonable diligence, have been discovered for use at the trial; that it is so material and relevant that it will probably change the result if a new trial is granted; that it is not merely cumulative or impeaching in character; and that it is reasonably possible that the evidence will be produced at the trial. See *State v. Lynch,* 2 *W. W. Harr.* (32 *Del.*) 600, 128 *A.* 565; *Vansant v. Kowalewski,* 5 *Boyce* 92, 90 *A.* 421; *Green v. Wilmington Trust Co.,* 4 *Boyce* 232, 87 *A.* 885; *State v. Matkins,* 45 *Mont.* 58, 121 *P.* 881; 3 *Encyclopedia Pl. & Pr.,* 587; *Fletcher, Equity Pl. & Pr.,* § 937; 21 *C. J.* 755; 46 *C. J.* 243. It must appear, then, that the evidence is newly discovered, and not merely that it is important. *Branch v. Klatt,* 173 *Mich.* 31, 138 *N. W.* 263.

The application should be by verified petition setting forth the nature of the suit, the verdict or decree, and the

new matter upon which the application is based. The evidence relied upon must be described distinctly and specifically, and the names of the witnesses, their addresses, and the facts to which they are expected to testify should be stated clearly and precisely. Strict affirmative proof of diligence must be made, and the facts constituting the exercise of diligence should be stated. *Fletcher, Equity Pl. & Pr.*, § 937; 20 *R. C. L.* 3089. These are rules generally adhered to.

It seems not to have been decided in this State whether the affidavit of the witness himself, detailing the evidence proposed to be given by him, is necessary to support the application. In *Cannon, Adm'r., v. Kinney*, 3 *Har.* 72, and in *Vansant v. Kowalewski, supra,* the motions appear to have been supported by the affidavits of the witnesses. In *Green v. Wilmington Trust Co., supra,* an affidavit was filed stating what the evidence of the witness would be. One of the reasons assigned for denying the application was that it did not appear from the affidavit filed that, if the witness were produced, his testimony would be as the petitioner claimed; but the report of the case leaves in doubt whether the court meant to say that the affidavit of the witness must, in all cases, be produced.

The court must, of course, be reasonably satisfied that the alleged newly discovered evidence actually exists. 46 *C. J.* 245; and there is authority for the rule that new trials will not be awarded on hearsay evidence. *Sheppard v. Sheppard,* 10 *N. J. L.* 250; *Connor v. McRae,* 193 *Mich.* 682, 160 *N. W.* 479; *Hammond v. Pullman, et al.,* 129 *Mich.* 567, 89 *N. W.* 358; *Atkinson, et al., v. Saltsman,* 3 *Ind. App.* 139, 29 *N. E.* 435; *Wheeler v. Troy,* 20 *N. H.* 77; *People v. Moore,* 29 *Misc.* 574, 62 *N. Y. S.* 252; *Arnold v. Skaggs,* 35 *Cal.* 684; *Shumway v. Fowler,* 4 *Johns.* (*N. Y.*) 425; *Cardell v. Lawton,* 16 *Vt.* 606; *Schaefer v. Wunderle,* 154 *Ill.* 577, 39 *N. E.* 623; *Whitten v. Saunders,* 75 *Va.* 563; *Kern v. Wyatt,* 89 *Va.* 885, 17 *S. E.* 549; *Page v. Holmes Burglar*

*Alarm Tel. Co., (C. C.)* 2 *F.* 330; *Rowan v. First National Bank,* 112 *Ill. App.* 434; *Jones v. Robson,* 30 *Ga.* 826; 3 *Encyclopedia Pl. & Pr.,* 587.

The affidavits of others than the witnesses themselves are, of course, but hearsay, and are not entitled to much credit. 20 *R. C. L.* 310; *Note,* 14 *Ann. Cas.* 423. Experience has shown that hearsay testimony is not trustworthy. Words, however true when spoken, are usually garbled in the re-telling; and however logically relevent, where is the line to be drawn, at the lips of the first person to whom it was told, or of him three or ten times removed? The human frailty of exaggeration, of misquoting, or defective memory make this type of evidence uncertain and dangerous. At the same time, hearsay evidence, like all other evidence, varies in its effect as establishing a probability of the existence of a fact; and we think it is too strict a rule to disallow it altogether in support of applications of the kind under discussion. The better rule, and the one that seems to be supported by the great weight of authority, is to require the petitioner to support his application by the affidavit of the witness by whom the facts are expected to be established, if it is reasonably possible to do so; and if not, satisfactorily to account for its absence. 20 *R. C. L.* 310; 46 *C. J.* 382, 6, 7; *Note,* 12 *Am. Dec.* 143; *Note,* 14 *Ann. Cas.* 423; *Fletcher, Equity Pl. & Pr.,* § 937; *Hilliard, New Trials, (2nd Ed.)* 514.

The rule, however, ought definitely to be circumscribed. Where the applicant cannot produce the affidavit of the proposed witness, and is compelled to rely on hearsay, if the evils resulting from an indiscriminate granting of new trials are to be avoided, and if the exercise of the court's discretion is to be more than form, the petitioner ought justly to be required to make a convincing showing of the merit of his application. The burden is upon the applicant to satisfy the court that the evidence is credible, *Greenleaf v. Grounder,* 84 *Me.* 50, 24 *A.* 461; indifferent

testimony showing that the relief relied upon can be had is necessary, *Read v. Staton,* 3 *Hayw.* (*Tenn.*) 159, 9 *Am. Dec.* 740; and the best evidence possible of the newly discovered testimony should be produced. *Smith v. Cushing,* 18 *Wis.* 295. The court is called upon to exercise its discretion, not with respect to legal evidence, but with hearsay, and to enable it to determine upon the probable existence of the evidence and the reasonable likelihood of its being produced at the trial, the materiality and relevancy of the evidence, and the degree of diligence exercised by the applicant, a full disclosure of the source of the evidence should be made. It is incumbent upon the petitioner, in his verified petition, to show when and by whom the information came to him, and the circumstances, surrounding the fact; and the petitioner's informant should, likewise, disclose the circumstances in which he acquired the information, and fully and precisely state what the alleged new witness said or did. 21 *C. J.* 742; 46 *C. J.* 324; *Fletcher, Equity Pl. & Pr.,* § 937; *Bourland v. Skimnee,* 11 *Ark.* 671; *Hodges v. Ross,* 6 *Tex. Civ. App.* 437, 25 *S. W.* 975; *Citizens' Nat. Bank v. Ratcliff,* (*Tex. Civ. App.*) 238 *S. W.* 362; *Jones v. Robson, supra; American Central Ins. Co. v. Hardin,* 148 *Ky.* 246, 146 *S. W.* 418. See *Jackson v. State,* (*Tex. Cr. App.*) 40 *S. W.* 998.

As the matter was first presented to the Chancellor, the allegations of the petition rested solely upon information and belief. It was averred that Mr. Woolfolk, President of Detroit City Gas Co. and other officials of the company would testify to certain facts detailed in the affidavit. The allegations with respect to unnamed witnesses may be dismissed without further comment. As to Mr. Woolfolk, there is no showing whatever of the source of the information. It does not appear that the petitioners, or any agent of theirs, ever talked with him, or even had attempted to do so. It does appear from the Chancellor's opinion that an offer was made to disclose to him in secret the source

of the information, an offer properly and decisively rebuffed; but apart from this manifestly improper attempt to supply the deficiencies of the petition, there was before the Chancellor no legal evidence, or even responsible hearsay evidence, upon which his discretion could be exercised. His refusal to re-open the hearing and to grant leave to file a bill of review was not only justified but demanded.

The appellants rely on *Quick v. Lilly*, 3 *N. J. Eq.* 255, *Egry Register Co. v. Standard Register Co.*, (6 *Cir.*) 1 *F. 2d* 11, and *Potter v. City of Coatesville*, (*D. C.*) 297 *F.* 230. In the first case the court was willing to rely upon a statement of expectation and belief of ability to produce evidence without more, observing that it was not then the time to inquire whether the petitioner could prove all the facts set out in his petition, and that a statement of the matters and facts which the petitioner expected and believed he would be able to prove, verified by his oath, was all that was necessary. In the other cases relied upon it would seem that it was the policy of the courts there to grant leave to file bills of review in doubtful cases as a matter of course. These authorities lose sight of recognized fundamental principles which ought to be observed in applications for new trials for newly found evidence; are not, as we think, in accord with the great weight of authority; and we find them unacceptable.

The petitioners, upon the refusal of the prayers of their petition, applied for the issuance of a commission to take the testimony of Mr. Woolfolk and certain named persons. In support of this application, the affidavits of Mr. Walser, attorney for the Maguire Committee, and of Mr. McCrae, Prosecuting Attorney for Wayne County, Michigan, were allowed to be filed. The Chancellor, in *R. H. McWilliams, Jr., Co. v. Missouri-Kasas Pipe Line Co.*, 22 *Del. Ch.* 324, 2 *A. 2d* 272, properly termed the application as a renewal of the matter of the petition. One of the assignments of error is that the court below erred in holding that the

petition filed, and the affidavits in support thereof, did not contain allegations of newly discovered evidence legally sufficient to authorize the grant of the prayer of the petition. The cause, in effect, has been argued as though the original petition had been supported by the affidavits.

The Walser affidavit makes no allegation of evidential fact whatever. It amounts to nothing more than a recital of his unsuccessful effort to obtain an affidavit, or at least, a statement from Woolfolk. The affidavit of McCrae, apart from its entirely superfluous and intrusive expression of opinion with respect to the Chancellor's duty in the premises, is but a statement of a reason why he could give no evidence. The first affiant would not, the second could not, give evidence. In view of these affidavits, both entirely empty of facts, the second of them of a most curious character, the Chancellor pertinently asked, "What will the named witnesses testify to? The receivers do not know. If any informant of their's has given them some information, the informant has not supplied an affidavit for use in this court." The appellants, in their brief of argument, vehemently challenge the accuracy of the Chancellor's statement that the receivers did not know what the witnesses would testify to. With manifest impropriety, as though the court would be influenced in the slightest degree by an unwarranted assertion of fact contained in a brief of argument, appellant's counsel say that the receivers know precisely what the testimony of the witnesses will be. With like impropriety, perhaps excusable in some degree, appellee's counsel characterize the asserted new evidence as a figment of someone's imagination, whether for political purposes or otherwise. This violent difference of opinion serves, at least, to show the necessity of a disclosure of the source of the information. It cannot be assumed that a law officer of the State of Michigan has violated the law of that State which, as it appears, requires the keeping secret of proceedings before grand jurors; nor can it be

assumed that Mr. Woolfolk violated the same law. The presumption is otherwise. What, then, was the source of the information? The petitioners declined to say. The Chancellor was called upon to exercise a sound, reasonable and legal discretion with respect to alleged newly discovered evidence. He was confronted not with legal evidence, not even with convincing hearsay, but with shadows, suggestions of evidence, impalpable and elusive. Veiled hints and subtle innuendoes may not be regarded as a sufficient substitute for that kind of convincing hearsay evidence to be allowed in the absence of legal evidence as a basis for leave to file a bill of review; and, whether the asserted evidence exists in fact, or whether its existence is a figment of someone's imagination, a just regard for the principles governing applications of this nature demanded that the petitioners, at least, disclose fully and precisely the source of the information to the end that the discretion of the court below might be properly exercised. The discretion to be exercised was a legal discretion on principles ascertained by adjudged cases. *Cannon, Adm'r., v. Kinney, supra.* A strong *prima facie* case should be made out on a petition for leave to file a bill of review. *Massie v. Graham, Fed. Cas. No.* 9,263, 3 *McLean* 41. The petition should be supported by strong affidavits. 2 *Maddox Ch.* 538. Abuse of discretion means a palpable mistake of judgment. *Bringhurst v. Harkins,* 2 *W. W. Harr.* (32 *Del.*) 324, 122 *A.* 783. If, then, the affidavits had been filed with the petition and considered at that time, we are entirely convinced that the Chancellor would not have abused his discretion in refusing the application; and viewing, as did the Chancellor, the application for the issuance of a commission to take testimony as a renewal of the matter of the petition, we agree with his characterization of the attempt as one "to ask the court to issue a commission to find out if something in the way of facts can be found which someone has told the receivers is obtainable." His refusal to allow the application

was a proper exercise of a sound, reasonable and legal discretion.

There is another reason, sufficient in itself, why the refusals of the court below to grant the applications made to him should be sustained.

The ancient rule, always to be observed, is, that no matter how material the testimony may be, an applicant for a new trial, or for leave to file a bill of review on the ground of newly discovered evidence, must show that he exercised due diligence to procure such evidence for use at the trial, and that it was through no fault or neglect that it was not then and there produced. As said in *Young v. Keighly,* 16 *Ves.* 353, the question always is, not what the party knew, but what, using reasonable diligence, he might have known. This has been the rule announced and applied by the courts of this State both at law and in equity.

Failure to make inquiry of persons likely to know the facts shows lack of diligence, 20 *R. C. L.* 293; and, as we view the record, there is no showing of diligence whatever. Through someone's effort and energy, certain settlements were made and suits composed by which the receivership estate benefited to the extent of several millions of dollars; and it is not surprising to find that a number of persons were prompt to claim remuneration as having produced that benefit. The committee, known as the Maguire committee, asked for an allowance for services and expenses exceeding $1,000,000. Warrick asked for $250,000, in addition to his expenses. These applications were, of course, known to the receivers, the company, the claimants and other persons interested. The interests of the Maguire committee and Warrick were strongly opposed, and it is manifest that the receivers and the company united in opposing an allowance to Warrick. The petitioners well knew that the issues raised by the application were with respect to the extent and effect of the services rendered by War-

rick and the amount of compensation justly to be allowed him. Material to the latter issue was the fact whether, for the same services, he had been compensated by any other person; and the receivers and the company, the petitioners here, proceeded on the theory not only that his services were not instrumental in producing the benefits accruing to the estate from the settlements, at least to the extent claimed by him, but also on the theory that he had been compensated, in whole or in part, for the same services by other companies which were interested in the settlements, among which was Detroit City Gas Company. They knew that he had been employed by that company, and had done some work for it at or about the time of the services claimed by him to have been rendered for the benefit of the estate. They knew that he had been paid certain fees by the Gas Company. He was asked by Mr. Schechter if that company had not paid him $12,500; by Mr. Logan if he had not been paid $15,000; by Mr. Walser whether he had not received compensation from the Gas Company apart from the work admittedly done and paid for by that company. These questions were admissible only on the theory that he had been compensated, to some extent at least, by the Gas Company for the same services for which an allowance was being asked. They regarded the knowledge which they had as pertinent and a sufficient cause for examining him closely concerning the facts, not once and casually, but three times and particularly. The examinations were searching, at times bitter, and showed an utter disbelief in the applicant's statements. It appears, notwithstanding the information they had which was certainly sufficient to put them on notice and to require them, as a part of their preparation for the hearing, to make inquiry from the company concerning the facts, that neither the petitioners nor any one for them had made the slightest inquiry of the company with respect to the matter, or any effort whatever to gather evidence upon the material issues

raised by the application. They did nothing before the trial, at the trial, or after the trial for ten months.

In their affidavits the petitioners, in excuse, state that the facts alleged in their petition were unknown to them, and were of a nature not suspected by them at the time of the hearing; that knowledge of the facts came to them casually, and that prior thereto they had no cause to suspect or to inquire whether Warrick had received payment from the Gas Company for the same services for which an allowance was made from the estate. To bolster these assertions, counsel, in their brief, say that Warrick was not an ordinary witness, but a member of the bar of a sister State, and that they, at the time of the hearing, had no reason to suspect his veracity. Even a casual reading of the record shows that the applicant's treatment at the hands of his cross examiners was not that of one whose veracity was not suspected; and apart from this, the petitioners were required, under the rule of diligence, to find and inquire of persons known or supposed to have participated in the act or transaction in controversy, or to have had some communication therewith or knowledge thereof, as to their knowledge in fact, 46 *C. J.* 255. Under any reasonable view of the rule requiring due diligence, the application must have been refused.

The appellee urges also that the leave to file a bill of review was properly denied, the decree not having been performed, citing *Story Eq. Pl.*, 397; 2 *Daniel Ch. Pl. & Pr.*, 1582; *Wiser v. Blackly*, 2 *Johns. Ch.* (*N. Y.*) 488; *Livingston v. Hubbs*, 3 *Johns. Ch.* (*N. Y.*) 124. Whether the rule is administrative or jurisdictional, what its limitations are, and whether it should be applied here (see 10 *R. C. L.* 576), it is not necessary to decide, as for the reasons given we are satisfied that the orders and decrees of the Chancellor must be sustained.