DUPUY G. WARRICK, Complainant,

*vs.*

MISSOURI-KANSAS PIPE LINE COMPANY, a corporation of the State of Delaware, Defendant,

MISSOURI-KANSAS PIPE LINE COMPANY, a corporation of the State of Delaware, Cross-Complainant,

*vs.*

DUPUY G. WARRICK, Cross-Defendant, R. H. MCWILLIAMS, JR., CO., Cross-Defendant.

*New Castle, Sept.* 17, 1940.

178

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*Logan & Duffy,* for defendant Missouri-Kansas Pipe Line Co.

THE CHANCELLOR: This case has been before this court on repeated occasions since 1936 (*R. H. McWilliams, Jr., Co. v. Missouri-Kansas Pipe Line Co.,* 21 *Del. Ch.* 308, 190 *A.* 569; *Id.* 22 *Del. Ch.* 281, 196 *A.* 813), before the Supreme Court (*In re Missouri-Kansas Pipe Line Co.,* 23 *Del. Ch.* 215, 2 *A.* 273), and is again being argued on two main issues: (1) on the motion of the complainant for the entry of a decree restraining and enjoining the prosecution of an action at law in accordance with the prayers of his bill, notwithstanding the defendant's answer thereto; (2) on the petition of the defendant for leave to file a bill to review the orders of the late Chancellor, dated December 23rd, 1936, as modified by the order of September 29th, 1937, and of April 5th, 1938, on the ground of newly-discovered evidence.

All of these orders relate to an allowance made to Dupuy G. Warrick for certain services rendered by him to the receivership estate, and expenses incident thereto, which were found to be of great value to the Missouri-Kansas Pipe Line Company, and which the Chancellor directed paid by the receivers.

The other facts subsequent to the original order of December 23rd, 1936, and culminating in an appeal to the Supreme Court (*In re Missouri-Kansas Pipe Line Co.,* 23 *Del. Ch.* 215, 2 *A.* 2d 273) and the affirmance by that court of the Chancellor's order of April 5th, 1938, are set out in some detail in the statement preceding this opinion. The latter order directed the original allowance and expenses to be forthwith paid to Warrick by the receivers.

The petition for leave to file a bill to review the orders entered in the receivership proceedings of 1932 will be considered first. A petition of that nature, on the ground of newly discovered evidence, is addressed to the sound discretion of the court. *R. H. McWilliams, Jr., Co. v. Missouri-*

*Kansas Pipe Line Co.*, 22 *Del. Ch.* 281, 196 *A.* 813. In order for such a bill to be filed, the defendant concedes, however, that it must appear, among other things: (1) that the newly discovered evidence relied on has come to the petitioner's knowledge since the trial; (2) that petitioner could not, in the exercise of reasonable diligence, have discovered such evidence for use at the trial; (3) that the newly discovered evidence is so material and relevant that it would probably change the result if a new trial should be granted; (4) that such evidence is not merely cumulative or impeaching in character; and (5) that it is reasonably probable that the evidence in question will be produced at the trial. *Id.*

The testimony of Mr. Woolfolk, the president of the Detroit City Gas Company, before the Michigan Public Service Commission is the evidence relied on as having been discovered since the hearing before the Chancellor prior to the entry of the order of December 23rd, 1936. Affidavits are also attached to the petition which state that this evidence could not have been discovered at that time by the exercise of reasonable diligence, and the reasons therefor. But the important question to determine is whether the evidence relied on would probably change the result if a new trial should be granted. I shall not attempt to analyze Woolfolk's testimony at length, or all of the testimony given by Warrick before the Chancellor, but from the latter's testimony it is apparent that his negotiations with the Columbia Companies, on behalf of the Missouri-Kansas Pipe Line Company, with respect to the controversies between them, started as early as May of 1935. The action taken by Warrick was at the request of Mayo and Linville, who represented large stock interests in the Missouri-Kansas Company, and were anxious that an attempt be made to rehabilitate it as it was then in the hands of receivers. Warrick also discussed the same question with representatives of the Columbia Companies in July of 1935. About August 1st, Moffat, the chief counsel for one or both of the Columbia Companies, asked him to submit a memorandum setting

forth his ideas as to the proper basis for a settlement between those companies and the Missouri-Kansas Pipe Line Company, or its receivers. At that time Moffat suggested that Warrick represent the Missouri-Kansas Company in any further negotiations with the Columbia Companies and that Reynolds conduct the negotiations for the latter companies. At some stage in those negotiations Warrick was, apparently, associated with Parish, but was ultimately forced to work more or less alone because of the apparent unfriendly relations existing between Parish and the Columbia Companies. Parish was not employed by the Detroit City Gas Company to perform any services for it until September of 1935. It is barely possible that there was some relation between Parish and Warrick before the former was employed by the Gas Company but that is not perfectly clear. At any rate, Warrick undoubtedly performed some services for that company, but it seems clear that his employment did not begin until September of 1935, or long after his negotiations had started with the Columbia Companies on behalf of the Missouri-Kansas Pipe Line Company. Furthermore, such services were, apparently, wholly of a legal nature. Woolfolk corroborates this testimony of Warrick.

The allowance made to Warrick by the Chancellor was solely for services rendered by him in negotiating a settlement between the Columbia Companies and the receivers of the Missouri-Kansas Pipe Line Company. These services may not have been performed at the express request of the receivers, but, as the Chancellor held, that did not prevent them from being of great value to the corporation.

At the hearing before the Chancellor, Warrick said:

"I take no credit either for the institution of that suit (the Government Anti-Trust suit against the Columbia Companies) or the handsome result that the Government achieved—I had nothing to do with that; my only contribution, if any, was pushing Columbia to meet their demands."

This statement is corroborated, rather than contradicted, by Woolfolk. He, among other things, said:

"I did not contemplate paying Mr. Warrick for this work which he did on the consent decree (entered against the Columbia Companies in the Government suit). He never presented any bill to me for that. But, when he presented his final settlement, I most certainly took into consideration the fact that he had been working on this settlement thing, and that we had been benefited thereby. I do not know that I can amplify that any more. * * *

"I would not have paid him that amount of money for the legal services that he gave us, but I took into consideration—although I did not tell him—I took into consideration the very excellent work he had done, and the results that had been produced by his efforts, and from which the Detroit City Gas Company benefited. I think at no time did I tell him why I settled his bill after having questioned it."

### Mr. Woolfolk further testified:

"Q. Do you deny that you employed Mr. Warrick to work upon effecting a settlement of the Government suit against Columbia Gas & Electric Company? A. Oh, yes, I did not do that."

* * * * * *

"Q. Now, Mr. Woolfolk, you did employ both Mr. Parish and Warrick to press their plan for a settlement of the Government suit against Columbia Gas & Electric, did you not? A. I employed Mr. Parish without any instructions, but my purpose in employing him was to have him * * *. I employed Mr. Warrick for certain specific legal work, but, in settling with Mr. Warrick—I took into consideration in settling what seemed to me his large bill, the work that he had done in 1935, in bringing about the settlement between the Government and Columbia Gas & Electric * * *."

"* * * Now, Mr. Warrick presented his bill to me, stating that it was for definite legal services for the Detroit City Gas Company. The amount was too large, $55,000, in my opinion, for the legal work. I would not have paid him that amount of money for the legal services that he gave us, but I took into consideration—although I did not tell him—I took into consideration the very excellent work he had done, and the results that had been produced by his efforts, and from which the Detroit City Gas Company benefited. I think at no time did I tell him why I settled his bill after having questioned it. I felt that the services, taken all in all, were well worth the money."

As I read Woolfolk's testimony, he neither directly stated nor intimated that he employed Warrick to effect a settlement between the Missouri-Kansas Pipe Line Com-

pany, or its receivers, of the claims against the Columbia Companies involved in the suit in the United States District Court in New York, or otherwise. His only interest in the Columbia Companies related to the settlement of the Government suit against those companies, so that they might feel free to finance the extension of the pipe line of the Panhandle Eastern Company to Detroit.

As I have already pointed out, Woolfolk also testified to three further facts:

(1)   That he never employed Warrick to effect a settlement of the Government suit against the Columbia Companies.

(2)   That when he settled with Warrick for legal services performed for the Detroit City Gas Company, it was for matters wholly unrelated to the Government-Columbia case; and that Warrick sought payment only for work done for that company, wholly unrelated to the Government case.

(3)   That in making payment in accordance with the bill rendered by Warrick, he did not even mention to him that he had taken into account any work done by him in bringing about the consent decree in the Government case.

Woolfolk may have made some other statements, which, standing alone, might justify some inferences in support of the claim of the petitioner, but the positive statements above quoted cannot be disregarded. When, therefore, the alleged newly discovered evidence is considered as a whole, it is apparent that it cannot be relied on to change the result if a bill of review should be permitted to be filed and a new trial granted.

The complainant is also entitled to a decree restraining and enjoining the prosecution of the action against him in the Superior Court, notwithstanding the defendant's answer and its cross-bill filed in the same proceeding. The whole record is attached to the bill, and whatever the allegations may be in the declaration filed in that case, with respect to

the title of the Missouri-Kansas Pipe Line Company to the alleged right of action against Warrick, an inspection of the order of September 29th, 1937, shows that it does not direct the transfer of any such alleged right to that corporation. Any possible right of action against Warrick, growing out of the allowances made by the Chancellor, would, therefore, be in the receivers who have not yet been discharged, and who are not in any way parties to this proceeding. The fact that the assets of the corporation might be increased if the orders, making the allowances to Warrick, could be vacated, is no answer to this conclusion.

The cross-bill contains substantially the same allegations that appear in the declaration in the action at law, and involves substantially the same question raised by the bill, and must, therefore, be dismissed. It asks that the Missouri-Kansas Pipe Line Company be awarded damages in the amount of $132,883.14, which is the precise aggregate amount of the allowance and expenses, the payment of which was ordered by the Chancellor.

The defendant contends that the complainant, in effect, seeks by his bill to enforce prior decretal orders of this court; and that no such order for a decree can be entered on his motion, without a clear showing by Warrick of the right and justice of his claim for the said allowance. This is because of the so-called Lord Redesdale Rule (*Hamilton v. Houghton*, 2 *Bligh*. 169, 4 *Eng. Repr.* 290; *O'Connell v. M'Namara, Ir. Ch.*, 3 *Dr. & War.* 411; *Union Central Life Ins. Co. v. Drake*, (8 *Cir.* 214 *F.* 536) ; and perhaps, in some measure at least, because the declaration in the action at law and the cross-bill both allege that the orders for such allowances were procured by a conspiracy to perpetrate a fraud on the court. The defendant claims that the underlying principle, upon which that rule is based, is that "He who seeks equity must do equity." There may be exceptional cases where the rule relied on would apply; but in most cases that could only be where an original bill is required

to enforce a prior unexecuted decree because of some peculiar circumstance. This sometimes happens when, through the negligent delay of the parties, their rights under the original decree have been so affected by a variety of subsequent events that a new decree is necessary in order to determine and settle them. 2 *Dan. Ch. Pl. & Pr.*, (6 *Amer. Ed.*) *1585; *Story's Eq. Pl.*, §§ 429-432; *Mitford's Pl. in Chan.*, (2d Ed.) 86, 87.

The evidence presented before the Chancellor by Warrick upon his application is in the record. The evidence relied on by the Missouri-Kansas Company, as newly discovered, has also been considered, and the conclusion reached that it does not justify a rehearing on the prior orders attacked. Under these circumstances, the application of the rule relied on by the defendant company, in substantially the same proceeding, could hardly be justified.

The complainant further contends that, by the application of the principles of *res judicata*, the Missouri-Kansas Company is precluded from explaining in its petition its failure to produce the evidence, now relied on, at the original hearing before the Chancellor; and that the application of the same principles also justifies his motion for a decree, in accordance with the prayers of the bill.

There was an appeal by the Pipe Line Company to the Supreme Court from the order of April 5th, 1938. That order was affirmed on two grounds; on one of which the Chancellor had expressly based his decision. In connection with the other ground, the Supreme Court said:

"It appears, notwithstanding the information they had [the petitioners or their counsel] which was certainly sufficient to put them on notice and to require them, as a part of their preparation for the hearing, to make inquiry from the company concerning the facts, that neither the petitioners nor any one for them had made the slightest inquiry of the company [the Detroit City Gas Company] with respect to the matter, or any effort whatever to gather evidence upon the material issues raised by the application. They did nothing before the trial, at the trial, or after the trial for ten months." *Missouri-Kansas Pipe Line Co. v. Warrick,* 23 *Del. Ch.* 215, 232, 2 *A.* 2d 273, 281.

The record before the court justified that statement; but the precise issue before this court is whether the question of negligence, though not discussed by the Chancellor in his opinion, was, by implication, necessarily decided by him by the decree entered, and was, therefore, a necessary issue before the Supreme Court.

The doctrine of *res judicata* does not require that a party litigant should ever be estopped from controverting any matter of law or fact which has not been, either by express declaration or by necessary implication, determined by the prior judicial decree relied on, and to which it was a party. *Bower on Res Judicata,* 102, 12, 13, 19; *Williams v. Daisey,* 7 *W. W. Harr.* (37 *Del.*) 161, 180 *A.* 908; *Venetsanos v. Pappas,* 21 *Del. Ch.* 177, 184 *A.* 489.

That principle may be controlling here, but in view of the conclusion already reached it seems unnecessary to determine that question. Notwithstanding the allegations in the plaintiff's declaration in the action at law, the Chancellor's orders for the payment of an allowance to Warrick have never been carried out; in view of the evidence, I see no reason for modifying those orders. The petition for leave to file a bill of review is therefore denied, the cross-bill is dismissed, and a motion for a decree notwithstanding the defendant's answer is granted.

The appropriate decree and orders will be entered accordingly.

Note. Affirmed on appeals. See *post pp.* 387 and 388.