**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 13, 2023

Richard I. G. Jones
John G. Harris
Michael W. McDermott
Harry W. Shenton IV
Berger Harris LLP
1105 North Market Street, 11th Floor
Wilmington, Delaware 19801

William M. Lafferty
Thomas W. Briggs, Jr.
Miranda N. Gilbert
Morris, Nichols, Arsht & Tunnel LLP
1201 North Market Street
Wilmington, Delaware 19801

Re:  *HControl Holdings LLC et al. v. Antin Infrastructure Partners
S.A.S.*, C.A. No. 2023-0283-KSJM

Dear Counsel:

This letter decision resolves the plaintiffs' motion for a new trial pursuant to Court

of Chancery Rule 59(a).[1]  The motion is denied.

As set out in greater detail in the May 29, 2023 Post-Trial Memorandum Opinion,

the plaintiffs ("Sellers") own a group of Florida broadband companies collectively referred

to as "OpticalTel."  They filed this action to force Antin Infrastructure Partners S.A.S. and

affiliated entities ("Buyers") to buy OpticalTel pursuant to a Merger Agreement.  I entered

post-trial judgment in favor of Buyers, finding that they validly terminated the Merger

Agreement.  The key finding was that one of Sellers' former employees, Rafael Marquez,

owned "phantom equity" under a Software Agreement that required HControl Corporation

---

[1] C.A. No. 2023-0283-KSJM, Docket ("Dkt.") 154 ("Sellers' Mot."); *see also HControl
Hldgs. LLC v. Antin Infrastructure P'rs S.A.S.*, 2023 WL 3698535 (Del. Ch. May 29, 2023)
("Post-Trial Mem. Op.").  Defined terms used in this letter have the meaning ascribed to
them in the Post-Trial Memorandum Opinion.

to pay Marquez "5% ownership of HControl Corporation to be distributed upon a liquidation event."[2]   Because of Marquez's phantom equity, Sellers' Capitalization Representations were inaccurate, entitling Buyers to terminate the Merger Agreement.

This case proceeded at record pace, even for this court.  Both sides requested expedition.  Sellers moved to expedite proceedings when they filed their complaint on March 6, 2023, because they were "at risk of imminent harm and losing their bargained-for rights each day that passes without the transaction closing."[3]  Buyers requested final resolution in advance of their debt financing commitment's expiration on June 9, 2023.[4] The parties' agreed-upon schedule culminated in a three-day trial that took place from May 10 through 12, 2023.[5]  Post-trial briefing concluded on May 22, 2023.[6]  I issued the Post-Trial Memorandum Opinion on May 29, 2023, and entered a final order and judgment on May 31, 2023.[7]  I issued my decision on May 29 to permit Sellers time to seek appeal before the June 9 expiration date.  Instead, on June 5, 2023, Sellers moved for a new trial.[8]

---

[2] Post-Trial Mem. Op. at *8.

[3] Dkt. 2 ¶ 8.

[4] *See* Dkt. 93 ¶ 135.

[5] Dkts. 134–36.

[6] Dkt. 137 (Sellers' Opening Post-Trial Br.); Dkt. 138 (Buyers' Opening Post-Trial Br.); Dkt. 141 (Sellers' Answering Post-Trial Br.); Dkt. 144 (Buyers' Answering Post-Trial Br.).

[7] Dkt. 153.

[8] *See* Sellers' Mot.  Rule 59(b) requires that a motion for a new trial "shall be served not later than 10 days after the entry of the judgment."  Ct. Ch. R. 59(b).  Sellers' motion was thus timely, and Buyers do not dispute this point.

Rule 59(a) allows this court to grant a new trial "on all or part of the issues for any of the reasons for which rehearings have heretofore been granted in suits in equity."[9] Whether to grant a new trial lies in the trial court's discretion.[10] To obtain a new trial under Rule 59(a), "the disappointed litigant must show that manifest injustice otherwise would result."[11] "Requests for new factual findings are not considered routine."[12] This general rule stems from the understanding that "while every litigant is required to make 'the fullest possible preparation of his case before trial . . . disappointment over the result [frequently] spurs the applicant to that diligence which he should have exercised before trial.'"[13] A movant cannot simply argue that they did not realize that they should have allocated more trial preparation to an issue: "This type of strategic second-guessing is not a basis for a new trial under Delaware law."[14]

Sellers seek a new trial to present additional evidence on the definition of "phantom equity."[15] They acknowledge that their motion is not based on newly "discovered" evidence. Instead, Sellers contend that a new trial is necessary to prevent manifest injustice

---

[9] Ct. Ch. R. 59(a).

[10] *Manichaean Cap., LLC v. SourceHOV Hldgs., Inc.*, 2020 WL 3097678, at *3 (Del. Ch. June 11, 2020).

[11] *Zutrau v. Jansing*, 2014 WL 6901461, at *2 (Del. Ch. Dec. 8, 2014) (quoting *Adams v. Calvarese Farms Maint. Corp.*, 2011 WL 383862, at *1 n.3 (Del. Ch. Jan. 13, 2011)).

[12] *St. Thomas v. Conference*, 1996 WL 361513, at *1 (Del. Ch. June 24, 1996).

[13] *Cole v. Kershaw*, 2000 WL 1336724, at *2 (Del. Ch. Sept. 5, 2000) (quoting *In re Missouri-Kansas Pipe Line Co.*, 2 A.2d 273, 277 (Del. 1938)).

[14] *Manichaean*, 2020 WL 3097678, at *4.

[15] Sellers' Mot. ¶¶ 18–21.

because "Buyers' late-breaking injection of their phantom-equity argument deprived Sellers of the chance to fully litigate the issue."[16]

This court has addressed similar arguments under the "affirmative proof of diligence" standard for newly discovered evidence. In *Manichaean*, for example, Vice Chancellor Slights denied a Rule 59(a) motion based on a legal regulation discovered post-trial, holding that the regulation did not give rise to "manifest injustice" where nothing prevented the movant from "directing its expert to address the issue or otherwise making this argument at trial."[17]

Decisions of the federal district courts of the Third Circuit interpreting the analogous Federal Rule are also instructive.[18] Under Federal Rule 59(a), a motion for a new trial in a nonjury case "should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons."[19] "In order to show clear error or manifest injustice, the [movant] must base its motion on arguments that were

---

[16] Dkt. 156 ("Sellers' Reply") ¶ 1.

[17] 2020 WL 3097678, at *4.

[18] *See* Fed. R. Civ. P. 59(a)(1)(B) ("The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: . . . after a nonjury trial, for any reason for which a re-hearing has heretofore been granted in a suit in equity in federal court").

[19] 11 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure—Civil* § 2804 (3d ed. 2012); *see also Mala v. Crown Bay Marine, Inc.*, 2011 WL 4590788, at *2 (D.V.I. July 22, 2011) ("A motion for a new trial in a nonjury case should be based upon error of law or mistake of fact on the face of the record."); *Sabinsa Corp. v. Creative Compounds, LLC*, 2012 WL 194123, at *2 (D.N.J. Jan., 23, 2012) ("In non-jury cases, the granting of a new trial is usually reserved for instances in which the trial was infected with manifest errors of law or fact." (internal citations omitted)).

previously raised but were overlooked by the court—parties are not free to relitigate issues that the Court has already decided."[20]

Nothing prevented Sellers from making arguments concerning phantom equity at trial. Sellers were aware of Buyers' theory that Marquez's interest violated Section 4.02. Sellers take issue with the fact that Buyers' notices of breach and termination did not expressly cite the phantom equity provision in Section 4.02. As the expedited timeline suggests, however, Buyers responded to the Marquez situation as more facts became available. The February 6, 2023 notice of breach informed Sellers that Buyers viewed Marquez's interest as violating Section 4.02.[21] Buyers' subsequent letters also cite Section 4.02 as the basis for Sellers' breach.[22] While Sellers correctly note that these notices do not explicitly reference "phantom equity," they placed Sellers on notice that Buyers viewed Marquez's interest as violating the Capitalization Representations.

On May 3, 2023, Buyers explicitly referenced phantom equity as a basis for breach in their pretrial brief. Sellers should have been well-acquainted with Section 4.02 by this point, and they had a full week (the same amount of time I took to write the Post-Trial Memorandum Opinion after the close of post-trial briefing) to prepare additional evidence related to phantom equity before trial.

---

[20] *Robertshaw v. Pudles*, 2014 WL 1789307, at *4 (E.D. Pa. May 6, 2014) (quoting *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003)).

[21] *See* JX-344.

[22] *See* JX-411; JX-492.

It also seems that, at least to some extent, Sellers and their expert anticipated the phantom equity theory before pre-trial briefing. In an earlier draft of his report, Professor Steven Davidoff Solomon referenced other merger agreements that Greenberg had prepared and how they defined similar equity securities.[23] When Professor Solomon used two examples that included the phrase "phantom stock," Sellers' counsel replied: "Section 4.02 of our agreement says phantom stock – so is highlighting use of that term in another agreement as a distinguishing factor actually helpful to us?"[24] In other words, phantom equity's presence in Section 4.02 was not a surprise to Sellers. They just decided to focus their trial preparation efforts elsewhere.

Sellers did allocate some of their trial time to phantom equity. Sellers' counsel questioned their fact witness Ravi Purohit about his understanding of phantom equity.[25] Sellers' counsel also asked Professor Solomon to explain his understanding of phantom equity.[26] On cross-examination, Sellers' counsel asked both Christopher Turek and Marc Reiser about Buyers' claims related to phantom equity.[27] Again, it is hard for Sellers' counsel to claim injustice from surprise when they elicited topical testimony at trial.

---

[23] JX-710.

[24] *Id.* at 51; *see also id.* at 65 (counsel stating, "Same comment re phantom stock. That phrase is in section 4.02. So I'm not sure highlighting it as a distinguishing factor of other agreements is helpful.").

[25] Trial Tr. at 14:9–15:6 (Purohit).

[26] *Id.* at 407:8–408:24 (Solomon).

[27] *Id.* at 682:2–24 (Turek); *id.* at 797:10–15 (Reiser).

Moreover, the court did not overlook Sellers' arguments as to timing and waiver. Sellers argued in post-trial briefing that Buyers waived any phantom equity theory by their "late-breaking" introduction of the argument in pretrial briefing.[28] I rejected this argument in the Post-Trial Memorandum Opinion, noting that the highly expedited nature of this case rendered Buyers' phantom equity theory timely.[29] Further, I acknowledged that Sellers had the opportunity to respond to this theory at trial and through post-trial briefing, which they did.[30] Sellers cannot demonstrate manifest injustice by repackaging their prior arguments on waiver just because they were unsuccessful the first time.

Precedent from this court favors rejecting Sellers' motion. As discussed above, in *Manichaean*, former Vice Chancellor Slights addressed a respondent's motion for a new trial in an appraisal proceeding.[31] In his post-trial opinion, the Vice Chancellor found that the petitioners won the expert battle, meaning that restricted stock units ("RSUs") should not be included in the total number of outstanding shares because their vesting was speculative. The respondent moved for a new trial, arguing that additional evidence regarding the treatment of vested but unsettled RSUs would require a different outcome. The Vice Chancellor disagreed. He reasoned that the respondent's proposed new evidence

---

[28] Sellers' Opening Post-Trial. Br. at 41; *see also* Sellers' Answering Post-Trial Br. at 5.

[29] *See* Post-Trial Mem. Op. at *27 ("This case revved up from filing to trial in under two months—the complaint was filed on March 6, 2023, and the pretrial briefs were filed on May 3, 2023. It is hard to fault Buyers for not formulating all of their legal theories earlier.").

[30] *Id.*

[31] *Manichaean*, 2020 WL 3097678, at *1.

was neither new nor outcome-determinative. Since the respondent's alleged manifest injustice was merely that it "now wishes it had made a separate argument concerning unsettled RSUs, rather than merely focusing on unvested RSUs, during its trial presentations," the respondent had failed to demonstrate the need for a new trial.[32]

This court similarly denied a motion for a new trial in *Zutrau v. Jansing*.[33] There, the plaintiff sued the president and sole director of the nominal defendant corporation. While the plaintiff was an employee, the president granted her an equity interest. When the plaintiff left the company, the president executed a reverse stock split that cashed out the plaintiff's interest. In its post-trial opinion, the court denied the plaintiff's request for rescission of the reverse stock split or dissolution of the company. The plaintiff moved for a new trial, citing "new" evidence that the president had conditioned the equity grant on her having a relationship with him. As the plaintiff admitted, however, her counsel already knew about those underlying facts and made a tactical decision not to present the evidence at trial. The court concluded that the plaintiff "may have a bone to pick with her attorneys on that point, but it does not provide a legitimate basis for retrying this case."[34]

The same outcome makes sense here. As reflected in their own discovery materials, trial testimony, and post-trial briefing, Sellers' counsel knew Buyers might argue that Marquez's interest fell within the definition of phantom equity. The need to move fast

---

[32] *Id.* at *4.

[33] 2014 WL 6901461, at *1.

[34] *Id.* at *4.

required the litigants to make strategic decisions, and Sellers chose to focus on other issues.

That choice does not outweigh the interest of finality in a post-trial judgment.

      Sellers' motion for a new trial is denied.

                        Sincerely,

                        */s/ Kathaleen St. Jude McCormick*

                        Kathaleen St. Jude McCormick
                        Chancellor

cc:    All counsel of record (by *File & ServeXpress*)