MISSOURI-KANSAS PIPE LINE COMPANY, a corporation duly organized and existing under the laws of the State of Delaware, in receivership in the Court of Chancery of the State of Delaware, in and for New Castle County,

Defendant Below, Appellant,

vs.

DUPUY G. WARRICK,

Petitioner Below, Appellee.

*Supreme Court, on Appeal, October 28, 1941.*

TERRY, J., dissenting.

LAYTON, C. J., RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Logan & Duffy*, for appellant.

*Caleb S. Layton*, of Richards, Layton & Finger, for appellee.

LAYTON, Chief Justice, delivering the majority opinion of the Court:

On March 18, 1932, receivers were appointed for Missouri-Kansas Pipe Line Company, hereafter referred to as Mokan.

Several attorneys filed petitions for allowances to be made them for services rendered the estate, and for expenses necessarily incurred, each stipulating that no appeal would be taken, or application would be made for rehearing, in respect of any decision made by the Chancellor.

The receivers had sued Columbia Gas and Electric Corporation, et al., for damages in the Federal Court for the District of Delaware, and there was pending in that court a suit of the United States against the Columbia Companies based upon an alleged violation of the anti-trust laws. It appears that the receivers, at one time, negotiated a settlement of their differences with the Columbia Companies for the sum of $300,000, and had asked leave to accept and consummate the settlement, but the Chancellor disapproved. Frank P. Parish, president of Mokan, and other of its stockholders and creditors requested Dupuy G. Warrick to undertake to negotiate a settlement of the claims for damages of Mokan against the Columbia interests, and, as a result of his efforts, a settlement was agreed upon by which Mokan recovered $300,000 in cash, and securities of the then market value of $9,700,000.

Mr. Warrick asked an allowance of $250,000 and expenses. The Chancellor, on December 23, 1936, after extended hearings, made awards, among them the sum of $125,000 to Mr. Warrick for his services in effecting the settlement, and the sum of $7,883.14 for his expenses incurred. The claim of Mr. Warrick was bitterly fought by the receivers and by a stockholders' protective committee formed at the instance of a Mr. Maguire, a large stockholder, and in his interest. This committee had asked for a very large allowance, but the Chancellor disallowed its claim. See *R. H. McWilliams, Jr., Co., Inc., v. Missouri-Kansas Pipe Line Co.*, 21 *Del. Ch.* 308, 190 *A.* 569.

At this time the receivers did not have in hand money sufficient to pay the awards, but would undoubtedly come into possession of ample funds. On September 29, 1937,

nine months after the date of the awards, the receivers, on their petition, were authorized to borrow $1,100,000.00, and they were directed, on consummating the loan to pay therefrom and from other funds in their hands all allowances made by the order of December 23, 1936.

The money was borrowed, and on October 27, 1937, the receivers had in hand sufficient money to pay the Warrick allowance. The receivers did not obey the terms of the order, but on the contrary, on October 27, 1937, sought to reopen the matter of the award to Mr. Warrick, or in the alternative, to file a bill to review the allowances made to him on the ground of after discovered evidence that Mr. Warrick had not disclosed to the Chancellor that he had been paid a large sum of money by Detroit City Gas Company for his services in negotiating the same settlement. This application was denied. See *R. H. McWilliams, Jr., Co., Inc., v. Missouri-Kansas Pipe Line Co.*, 22 *Del. Ch.* 281, 196 *A.* 813.

On November 3, 1937, the receivers and the Company applied for an order directing the issuance of a commission to take the testimony of the president of Detroit City Gas Company and others. This application was also denied, as being no more than a renewal of the application to reopen, or to file a bill of review. See *R. H. McWilliams, Jr., Co., Inc., v. Missouri-Kansas Pipe Line Co.*, 22 *Del. Ch.* 324, 2 *A.* 2d 272, 273. The opinion was handed down on April 1, 1938, and it was followed by an order dated April 5, 1938, directing the receivers to pay forthwith the allowances made to Mr. Warrick.

On appeal to this court, the decrees of the Chancellor were sustained not only for the reasons advanced by the Chancellor, but also for that the receivers had not exercised due diligence to obtain the testimony of the witnesses. See *R. H. McWilliams, Jr., Co., Inc., v. Missouri-Kansas Pipe Line Co.*, 22 *Del. Ch.* 324, 2 *A.* 2d 272; *In re Missouri-Kansas Pipe Line Co.*, 23 *Del. Ch.* 215, 2 *A.* 2d 273.

The opinion of this court was handed down on October 11, 1938, and on that same day Mokan brought suit by way of foreign attachment against Mr. Warrick in the Superior Court for New Castle County, and attempted to attach the checks given in payment of the Warrick allowances in the hands of his attorney. The basis of this suit was the allegation that Mr. Warrick had been guilty of fraud in failing to disclose. certain facts at the hearing before the Chancellor of his petition for compensation.

On April 2, 1939, Mr. Warrick filed a bill to enjoin the action at law; and a permanent injunction issued. See *Warrick v. Missouri-Kansas Pipe Line Co., ante p.* 177, 15 *A.* 2*d* 298. On appeal to this court, the decree of the Chancellor was sustained in an opinion filed herewith, *ante p.* 387, 22 *A.* 2*d* 871.

In the meantime, on December 6, 1939, the Company again sought to review the allowances made to Mr. Warrick, and petitioned again for leave to file a bill of review based on after discovered evidence. The application was denied on the ground that the evidence was insufficient to show that Mr. Warrick had testified falsely at the hearing of his petition for compensation. See *Warrick v. Missouri-Kansas Pipe Line Co., ante p.* 177, 15 *A.* 2*d* 298. On appeal to this court, the decree of the Chancellor was sustained in an opinion this day filed, *ante p.* 455, 22 *A.* 2*d* 871.

On October 17, 1940, Mr. Warrick moved for the payment of the amount of the allowance awarded to him together with interest at six percent from December 23, 1936; and on January 15, 1941, the Chancellor entered an order allowing interest on the sum of $132,883.14 from April 5, 1938 to December 28, 1940, the date of the payment of the principal sum; and the Company was directed to pay to the rceivers a sum sufficient to enable them to comply with the order.

The Company has appealed. It contends that decrees entered by the Court of Chancery directing the payment of

money do not carry interest in the absence of specific direction in the decree; that the common law of Delaware does not require the payment of interest on judgments or decrees, nor do the statutes; that Mr. Warrick had stipulated not to appeal or to ask rehearing with respect to his allowance, and as the order of December 23, 1936, made an allowance without interest, his motion should have been denied; that the court below was without power to add interest, as the several decrees were enrolled before the motion was made; and that the court below was without power to add interest to the decree of April 5, 1938, because that decree was affirmed by this court without direction that interest be added.

There is no statute which, in terms, provides that money judgments and decrees shall bear interest. The statutory authority is indirect. *Section* 3694 *of the Revised Code of* 1935, in relation to the satisfaction of mortgages and judgments in cases where, through neglect or refusal, no satisfaction has been entered, provides that the rule required to be issued shall be made absolute on its return if the court shall be satisfied from the evidence produced that such mortgage or judgment, together with all interest and costs due thereon has been satisfied and paid. Likewise by *Section* 4648 in relation to judgments obtained on affidavit of demand, it is provided that stay of execution for six months shall be granted on security being given by the defendant for the payment of such judgment, with interest and costs, in such form as by the rules of the court shall be prescribed. By *Section* 4873 it is provided that when an execution is issued on a judgment for a penalty, the officer issuing the same shall endorse thereon the real debt and the time from which interest is to be calculated. By *Section* 4507, the plaintiff in a judgment obtained before a justice of the peace, in case where the defendant has obtained a stay of execution, may transfer the judgment to the Superior Court, and the Prothonotary is required to enter in his judgment docket the time from which interest runs. All these statutory provisions are in recognition of an immemorial practice. Judge

Woolley, in his work on *Delaware Practice* (1 *Woolley, Del. Pr.* § 831) says that "upon the payment of the debt, interest and costs due upon a judgment the defendant is entitled to have satisfaction entered upon the record"; and in *Section* 836, in speaking of the satisfaction of a judgment by return of the Sheriff on execution process, he says, if the debt, interest and costs have been paid to the Sheriff, he simply makes return, "Sheriff for debt, interest and costs."

An appendix to *Volume* 1, *Laws of Delaware*, is headed, "Appendix containing Various Public Papers including Certain Legislative Acts, which although expired, altered or repealed, are necessary to be known and preserved." In this appendix are to be found two enactments relating to the taking of lands in execution for the payment of debts. The first act, passed in 1694, appears at page 18, the second passed in 1700, at page 36. Both acts were passed at a time when "the three lower counties on Delaware" were united to the Province of Pennsylvania. By the first act it was provided "that lawful interest be allowed to the creditor from the time of said judgment obtained, until the said time of sale or satisfaction." By the second act the same direction was expressed in the following language, "provided * * * that lawful interest shall be allowed to the creditor for the sum or value he obtained judgment for, from the time the said judgment was obtained, till the time of sale, or till satisfaction be made." It was the provision of the latter act which is quoted in *Berryhill v. Wells*, 5 *Bin., (Pa.)*, 56, and spoken of as having "made an important alteration in the English law"; and the court proceeded to say, "I take the practice under this law to have been, both before and since the American revolution, to ascertain the real debt at the time of the judgment entered, and to calculate interest thereon as a new principal."

Judgments at common law did not bear interest, at least in the sense that interest on them was collectible through execution process. But even under the common law

of England, if action was brought on the judgment, the plaintiff was entitled to recover an additional sum, styled as interest or damages, equivalent in amount to the interest allowable in actions of debt. 2 *Freeman, Judgments* (*5th ed.*) § 1090. But there is a common law not confined to the ancient unwritten law of England which comprises principles and rules of conduct with respect to the security of persons and property derived from usage and custom of immemorial antiquity; and it can be said with assurance that the right of the creditor to demand and receive interest on money judgments is a right secured by the common law of this State derived, as is most probable, from the ancient statutes.

This conclusion finds support in the case of *Erie Railway Co. v. Ackerson*, 33 *N. J. L.* 33, where it was said that from a very early period it had been the practice in New Jersey to collect legal interest on a judgment by means of an endorsement on the execution, and that the right so to do must be regarded as the common law of the State. See also *Wilson v. Marsh*, 13 *N. J. Eq.* 289; *Simon v. New Jersey Asphalt, etc., Co.*, 123 *N. J. L.* 232, 8 *A.* 2d 256.

In 2 *Freeman, Judgments, supra,* it is said that courts of equity habitually allowed interest on judgments as damages independently of any statute requiring them to do so, although in general they were controlled by rules governing the law courts. Lord Chancellor Loughborough, in *Creuze v. Hunter*, 2 *Ves. Jr.* 157, 164, 165, was "not unwilling to admit" that a Master's report confirmed should "have as large an effect as a judgment at law," but refused to allow interest as there was "no possibility of doing it at law." In *Wither's Appeal*, 16 *Pa.* 151, it was said that a decree of the Orphans' Court is like a judgment, to which interest, in Pennsylvania, is a necessary incident. See *Crawford's Estate*, 313 *Pa.* 127, 169 *A.* 438. In this State judgments at law have always borne interest. A decree of an equity court for the payment of money does not differ essentially from a like judgment in a court of law; and a successful suitor in the

one court ought to stand in as favorable a position as in the other. It follows that a decree in the Court of Chancery for the payment of money bears interest from the date of its entry.

The decree in the instant case was entered on December 23, 1936. It is unnecessary to comment on the nature of the opposition which for several years has delayed the payment to the claimant of the amounts allowed to him for his services to the receivership estate. The Chancellor was right in principle in ordering the payment of interest on the sum of the allowances made, but the interest should have been allowed from the date of the decree. The whole matter of interest is before the court. The question is not one of power, but of administration. The decree of the Chancellor will be modified by allowing interest on the sum of $132,-883.14 from December 23, 1936, to December 28, 1940, when the principal sum was paid.

There is no merit in the other contentions urged by the appellant. They are all based on the conception that a decree in Chancery for the payment of money does not bear interest in the absence of statute or specific direction in the decree.

As modified the decree of the Chancellor is sustained, and the cause is remanded to the court below for such action as may be necessary.

TERRY, Judge (dissenting):

My view of this case differs somewhat from my associates concerning the question as to whether or not the decree in Chancery herein for the payment of money bears interest from the date of its entry when interest was not included as a part thereof.

I concur with the majority of this court to the extent that under the common law of this State money judgments in the court of law bear interest from the date of entry, and

subscribe to the reasons therefor as ably set forth in the majority opinion. This rule, however, is confined in its operation and scope to judgments at law, as it cannot be successfully contended that the policy, custom or practice in the Court of Chancery in this State in the past has been to allow interest upon decrees in Chancery for the payment of money when interest was not expressly included as a part thereof. We do not have a statute specifically allowing interest on decrees for the payment of money, nor any statute from which such an inference could be fairly drawn. It is obvious, therefore, that, if the common law rule applicable to judgments at law is to be extended to decrees in Chancery for the payment of money, the reason must be predicated upon the theory that a decree in the Court of Chancery for the payment of money does not differ essentially from a like judgment in the court of law, and, as such, the equitable maxim, "equity follows the law," must be applied.

Operating through the background of equitable jurisprudence are found fixed principles which because of their basic usefulness and the frequency of their application have been termed maxims. One of the most prominent maxims to be found is "equity follows the law." This maxim can be defined as being a principle or rule of equity upon which express or definite action taken by the Chancellor can be justified.

The appellee in this case predicates his claim for interest on two grounds. First, that a decree in Chancery for the payment of money is analogous to a judgment at law, and, since equity follows the law, this decree should bear interest from the date of its entry. Second, since the company is in receivership, the action taken by the appellee in filing his petition for payment under the decree of December 23, 1936, together with interest from that date, is equivalent to an action at law on a judgment on which interest could be collected.

My difficulty arises in being able to conclude that in this case the Chancellor applied the maxim, and, therefore, the decree for the payment of the money herein bears interest from the date of its entry, December 23, 1936. This case falls within that class of cases wherein the maxim, "equity follows the law," has but a limited application. My reason for this statement is founded upon the existence of that great discretionary power that has rested in that court since its very inception. Equity in many cases has decided differently from courts of law, especially in those cases where circumstances were involved wherein the court of law could not advert, but which in view of substantial justice were deserving of individual consideration, and which a court of equity, proceeding on principles of substantial justice, felt itself bound to respect.

It is said that judgments at law for the payment of money bear interest from the date of their entry by reason of a common law right of this State, and it is asserted that a decree in Chancery does not differ in essence from a like judgment in the court of law; therefore, a suitor in one court ought to stand in as favorable a position as in the other; consequently, a decree in the Court of Chancery for the payment of money bears interest from the date of its entry.

The majority of the court has stated in effect that it matters not whatever the true interest of justice demands the Chancellor cannot enter a decree for the payment of money and deny interest from the date of entry as a part thereof, and, if interest is not included as a part of said decree, the decree bears interest from the date of entry, as interest is a necessary incident thereto. As authority for this position, the case of *Wither's Appeal*, 16 *Pa.* 151, is cited, wherein the Supreme Court of Pennsylvania, without reservation, held that a decree of the Orphans' Court is equivalent to a judgment at law to which interest in Pennsylvania is a necessary incident, in that it cannot be doubted that an administrator is chargeable with interest from the

date of the decree. Under this ruling the theory of discretion, as previously stated, has been completely denied, and a decree for the payment of money in Pennsylvania, irrespective of existing equities, would bear interest from the date of its entry.

I am unable to concur in the conclusion above, for, if the equities were such as of the date of the entry of the decree that would not justify the decreeing of interest, it could not be expressly included as a part of said decree, much less attach under the theory above stated. The Chancellor, unless specifically bound by statute, has complete control over the subject matter of his decree. His decree when entered speaks for itself, and a recovery thereon must be consistent with the language thereof; to hold otherwise would be to construe the maxim as a positive rule to be applied in all cases where analogies exist, irrespective of existing equities as of the date of entry, or the specific language thereof.

Equity in a broad sense signifies natural justice, and any attempt to apply the maxim as a hard bound inescapable rule of equity does not bespeak the true governing principles of that court, but to use the maxim within the proper meaning to be ascribed thereto signifies that equity usually follows the law, and, ordinarily, if equity gives interest upon a decree, it does so by reason of the fact that judgments at law bear interest. However, we must not lose sight of the fact that a court of equity when not specifically bound by statute law always gives or withholds interest as under all the circumstances of the case and the law applicable thereto, after weighing the equities, it deems equitable, reasonable and just.

I am aware of the many instances wherein equity must follow the law, especially in those cases dealing with legal rights wherein the court of equity is as much bound as would be a court of law if the litigation was pending in law. This case, however, does not fall within this statement.

The application of the maxim to the case before the court is generally the main difficulty. In cases where the application of the maxim is not tantamount to a positive rule, that is, the enforcement of a statute or a legal right, the true method of making the application is to ascertain the origin of the maxim, and whether the case to which it is sought to be applied is of the same character. If found to be, the application then is predicated upon the existing equities as of the date of the entry of the decree. No attempt should ever be made to shackle justice by a strict application of the maxim in cases where analogies exist as its pertinency governed by proper discretion denotes the true governing principles of that type of natural justice which equity affords to all suitors.

It is my opinion that the maxim is, or is not, applied by the Chancellor as of the date of the entry of his decree, and, as stated before, his decree when entered speaks for itself.

The Chancellor in entering his decree in this case should have followed the law, provided the equities were equal or prevailing on the side of the law as of the date of the entry of his decree. Otherwise, the maxim could not be applied.

Now, if the Chancellor as of the date of his decree, December 23, 1936, concluded that the equities were such that the maxim should be applied, can it be said that his silence pertaining to interest therein is sufficient to assert that conclusion? I think not. If the maxim is relied upon as the ground for allowing interest, the decree must be expressive to that extent.

My conclusion, therefore, necessarily is that interest not being expressly included as a part of the decree of December 23, 1936, the said decree did not bear interest from the date of its entry.

Having reached the above conclusion as to the first contention of the appellee, the second contention must fall.