Frank E. MOFFITT, Sr., Defendant
Below, Appellant,

v.

Patricia A. CARROLL, and Lloyd C. Carroll, a minor, by his next friend, Patricia
A. Carroll, Plaintiffs Below, Appellees.

No. 299, 1993.

Supreme Court of Delaware.

Submitted: April 5, 1994.
Decided: April 18, 1994.

Allan Wendelburg, Wilmington, for appellant.

James A. Erisman of Daley, Erisman & vanOgtrop, Wilmington, for appellees.

Before MOORE, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a decision of the Superior Court. The plaintiffs-appellants are Lloyd C. Carroll ("Carroll"), a minor, and Patricia A. Carroll, his next friend. The defendant-appellee is Frank E. Moffitt, Sr. ("Moffitt").

Carroll filed a civil action against Moffitt on March 23, 1990. The complaint alleged that when Carroll attempted to cross the street near an intersection in Townsend, Delaware, he was struck by an automobile driven by Moffitt. According to Carroll, the accident resulted from Moffitt's negligent operation of his automobile. In answering Carroll's complaint, Moffitt alleged, *inter alia*, that Carroll had been contributorily negligent with regard to the accident.

The case was tried before the Superior Court without a jury on January 4–5, 1993. In a written decision on January 7, 1993, the Superior Court judge concluded that Moffitt was in fact negligent in the operation of his automobile. The judge concluded that Carroll has sustained damages in the total amount of $80,000. The judge also found, however, that Carroll had been contributorily negligent in crossing the street in an improper manner.

Applying the Delaware comparative negligence statute, the judge determined that Moffitt was 80 percent at fault in the accident, and that Carroll was 20 percent at fault. 10 *Del.C.* § 8132. Accordingly, the Superior Court awarded Carroll $64,000 and costs. That amount represented 80 percent of the $80,000 in compensation to which Carroll would have been entitled had he not been contributorily negligent.

On January 19, 1993, Moffitt filed a motion for a new trial pursuant to Superior Court Civil Rule 59. In this motion, Moffitt alleged that the trial court had misapplied Delaware law relating to child negligence, and also

asserted that the damages assessed by the trial court were excessive. On July 19, 1993, by written order the Superior Court denied the motion for a new trial, but reduced the award of damages to Carroll to $56,000 based upon its finding that the appropriate compensation for Carroll's injuries was $70,000, rather than $80,000. Additionally, the Superior Court awarded Carroll interest on the $56,000 judgment commencing on January 5, 1993.

Moffitt filed a motion to alter or amend the judgment on August 2, 1993. Super.Ct.Civ.R. 59(d). Moffitt contended that interest on Carroll's judgment should accrue only as of July 19, 1993. The Superior Court judge agreed. On August 13, 1993 the Superior Court amended the judgment so that the effective date for interest was July 19, 1993.

Moffitt appealed to this Court. Moffitt contends that the Superior Court erred, as a matter of law, in its apportionment of comparative negligence between the child-plaintiff and the adult-defendant. Carroll has cross-appealed. Carroll contends that the Superior Court erred, as a matter of law, by ordering that interest should accrue only as of the date of its July 19, 1993 amended judgment. Carroll also asserts that the Superior Court abused its discretion in its July 19, 1993 order by reducing its award of damages from $64,000 to $56,000.

We have concluded that the Superior Court did not err, as a matter of law, in its apportionment of comparative negligence between Carroll and Moffitt. We have also concluded that the Superior Court did not abuse its discretion in reducing the award of damages. However, the Superior Court did err, as a matter of law, by ordering that interest on Carroll's judgment should accrue beginning July 19, 1993, rather than on January 7, 1993, the date of the Superior Court's entry of judgment. Accordingly, the judgment of the Superior Court is affirmed in part and reversed in part, and this matter is remanded for further proceedings in accordance with this opinion.

## Facts

On March 26, 1988, Carroll, then seven and a half years of age, was attending the opening of a store on the southeast corner of Main Street in Townsend, Delaware. The record reflects that a crowd of about 50 to 75 people was present for the festivities. Carroll was asked by an adult companion to perform an errand which would require him to cross Main Street. Carroll's first trip across the street was uneventful.

However, when Carroll was crossing the street on his return trip, an automobile driven by Moffitt struck Carroll. The record reflects that Moffitt's automobile traveled approximately 33 feet after the impact. There were no skid marks at the scene. Carroll sustained a compound fracture of his left leg.

At trial, Moffitt testified that he did not see Carroll until after the accident had occurred and he heard the sound of the impact. Three eyewitnesses testified that they observed Moffitt looking away from the street, in the direction of the festivities at the store, immediately prior to the accident. Based upon this testimony, the Superior Court judge found that the "unusual activity distracted [Moffitt] for a very short time so that he failed to see [Carroll] in the street," and that Moffitt "was momentarily inattentive by failing in his common law duty and statutory duty to maintain a proper lookout for pedestrians, especially young ones." *See* 21 *Del.C.* § 4176(b).

Carroll, on the other hand, testified that he looked for traffic in both directions before he crossed the street. He also testified that he did not see the automobile that struck him until the moment of impact. Accordingly, the Superior Court judge found that "if [Carroll] looked he did not do so as carefully as he should have because there was a car approaching and [it] should have been seen." *See* 21 *Del.C.* § 4142(b).

Based upon these findings, the Superior Court concluded that both Moffitt and Carroll were "negligent each in a manner which was a proximate cause of the accident." The judge then assigned 80 percent of the fault to Moffitt and 20 percent of the fault to Carroll, and adjusted the damages ultimately awarded to Carroll for his injuries accordingly.

### Child Negligence in Delaware
### Common Law Standard of Care

The standard of care attributable to children for the proof of negligence is well-established in Delaware: "The maturity and capacity of the child, [his] ability to understand and appreciate the danger, [his] familiarity with the surroundings, together with the circumstances under which the accident occurred, must all be taken into consideration in determining whether or not [he] was guilty of contributory negligence." *Pokoyski v. McDermott,* Del.Supr., 167 A.2d 742, 745 (1961). The Superior Court's written decision specifically applied the *Pokoyski* standard of care in determining that Carroll was contributorily negligent, when Carroll crossed the street in front of Moffitt's automobile.

The Superior Court's written disposition then stated that "[t]he *degree* of [Carroll's] negligence is reduced as a result of his being only seven and one-half years of age" (emphasis added). Moffitt contends that this statement was erroneous, as a matter of law, insofar as the language suggests that Carroll received the benefit of a "double reduction" in the trial judge's analysis of Carroll's comparative negligence. Carroll, on the other hand, argues that this language simply reiterates the Superior Court's correct explanation of the standard of care for determining the negligence of a child. According to Carroll, when the statement is read in context, Moffitt's contention attaches undue significance to the trial judge's use of the term "degree."

### Delaware Comparative Negligence Statute
### General Relationship to the Common Law

■ In 1984, Delaware adopted its comparative negligence statute:

In all actions brought to recover damages for negligence which results in death or injury to person or property, the fact that the plaintiff may have been contributorily negligent shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the negligence of the defendant or the combined negligence of all defendants against whom recovery is sought, but any damages awarded shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

10 *Del.C.* § 8132. This Court has stated that the adoption of the statute "manifests a legislative intention from that date to retreat from a system of inflexible and unforgiving rules in favor of evaluation of the plaintiff's conduct on a case-by-case basis." *Koutoufaris v. Dick,* Del.Supr., 604 A.2d 390, 398 (1992). Pursuant to Delaware's comparative negligence statute, "where negligence is reflected in the conduct of both [two or more] parties, liability, and consequent recovery, [should] be determined proportionately." *Id.*

■ Accordingly, this Court has held that "Delaware's adoption of a modified comparative negligence statute changed the common law result, in some circumstances, if the plaintiff is *contributorily negligent.*" *Culver v. Bennett,* Del.Supr., 588 A.2d 1094, 1098 (1991) (emphasis added). Likewise, this Court has concluded that the Delaware comparative negligence statute modified the other common law rule which absolutely barred recovery whenever a plaintiff *assumed a risk* of physical harm. *Koutoufaris v. Dick,* 604 A.2d at 398. However, we have also held that the comparative negligence statute did not reflect any legislative intent to change Delaware's common law, "but for" standard for *proximate causation. Culver v. Bennett,* 588 A.2d at 1098.

### Delaware Comparative Negligence Statute
### Standard of Care for Children Unchanged

■ Similarly, this Court now concludes that the Delaware comparative negligence statute reflects no legislative intent to change Delaware's historic common law determination of child negligence in accordance with the standard of care articulated in *Pokoyski. Compare Culver v. Bennett,* 588 A.2d at 1098. Consequently, Delaware continues to adhere to its common law standard of care for determining the negligence of a child. *See Beggs v. Wilson,* Del.Supr., 272 A.2d 713 (1970); *Pokoyski v. McDermott,* Del.Supr., 167 A.2d 742 (1961). *See also Audet v. Convery,* Del.Super., 187 A.2d 412 (1963). Therefore,

superimposed upon Delaware's statutory framework of comparative negligence is the well-established principle that a child's negligence is to be determined by a standard of care which is based upon an individualized assessment of the child's age, intelligence, maturity, and other factors relevant to the conduct involved. *Pokoyski v. McDermott*, 167 A.2d at 745.

### Other Jurisdictions
### Comparative Negligence of
### Children and Adults

Since the enactment of Delaware's comparative negligence statute, this Court has not addressed the question of whether a trier of fact should apply the principle enunciated in *Pokoyski* not only to the determination of whether the child breached the applicable standard of care, but also to the *apportionment* of comparative negligence among the child and any other negligent actors who proximately caused the resultant injury. However, other jurisdictions have addressed the issue. *See generally* Palmer & Flanagan, *Comparative Negligence Manual* §§ 4B.130–140 (rev. ed. & 1992 Cum.Supp.). The authors of a recognized treatise have described the view of a majority of jurisdictions on this question as follows:

> Although comparison of a minor plaintiff's negligence may vary between jurisdictions, a set procedure is followed by most courts. First, the age and experience of the child are considered in determining whether that child was *at all* negligent. The child's *capacity* is used to establish a standard of care for that child, after which it is asked whether he or she violated that standard. Second, negligence of the parties is apportioned. However, *the age and experience of the child are not utilized when apportioning fault in the second step of this procedure.* The courts have consistently failed to discuss *how* the child's negligence should be compared with the conduct of the adult party. Thus, although a child's age and experience may initially be considered when assessing that child's capacity for negligence, such factors have been conspicuously absent on comparing the conduct of the parties in apportioning causal negligence, an indication that they are not to be so applied.

Palmer & Flanagan, *Comparative Negligence Manual* § 4B.130, at 20–21 (emphasis added) (footnotes omitted). *See, e.g., White by Stevens v. Southeastern Pa. Transp. Auth.*, 359 Pa.Super. 123, 518 A.2d 810, 817 & n. 3 (1986), *allocatur denied*, 515 Pa. 609, 529 A.2d 1082, 1083 (1987). An alternative, minority approach, known as the "Wisconsin view," has been adopted in several jurisdictions:

> Under this system, the age and experience of the child are considered in determining whether that child was in fact negligent. If so, these same factors are again considered in comparing the negligence of the minor plaintiff with that of the adult defendant. The capacity of the child is thus used for establishing which standard of care applies to the minor plaintiff *and* in apportioning fault.

Palmer & Flanagan, *Comparative Negligence Manual* § 4B.140, at 22 (emphasis added) (footnotes omitted). *See Blahnik v. Dax*, 22 Wis.2d 67, 125 N.W.2d 364, 369 (1963). *Accord Howard v. Allstate Ins. Co.*, La.Supr., 520 So.2d 715, 719 (1988); *MacConnell v. Hill*, Tex.Civ.App., 569 S.W.2d 524, 528 (1978).

■ It is well-established in Delaware that proximate causation is defined as "that direct cause without which [an] accident would not have occurred." *Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1097 (1991) (quoting *Chudnofsky v. Edwards*, Del.Supr., 208 A.2d 516, 518 (1965)). This standard is commonly referred to as the "but for" test. *Id.* Stated more fully, in order to satisfy the "but for" test, a proximate cause must be one "which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *Id.* (quoting *James v. Krause*, Del.Super., 75 A.2d 237, 241 (1950)). This Court has long recognized, however, that there may be more than one proximate cause of an injury. *Id.* (citing *McKeon v. Goldstein*, Del.Supr., 164 A.2d 260, 262 (1960)).

According to Prosser and Keeton, "[t]here is some debate over what is to be compared

under comparative negligence—negligence [culpability] or causation." Prosser & Keeton, *The Law of Torts* § 67, at 474 (5th ed. 1984). *Compare State v. Kaatz*, Alaska Supr., 572 P.2d 775, 781 (1977) (negligence) *and Amend v. Bell*, 89 Wash.2d 124, 570 P.2d 138, 142 (1977) (negligence) *with, e.g., Hood v. Oakley*, Miss.Supr., 519 So.2d 1236, 1240 (1988) (causation). The "Wisconsin view" is most consistent with the premise that the apportionment of fault in a comparative negligence system should be based upon the *culpability* of the conduct which resulted in the injurious event, rather than being based upon the respective "causative effect" of the conduct involved. *See Brice v. Milwaukee Auto. Ins. Co.*, 272 Wis. 520, 76 N.W.2d 337, 340 (1956). Therefore, jurisdictions which exclude causation from an apportionment analysis could logically conclude that different standards should be applied to children and adults with regard to the comparative unreasonableness of their conduct.[1] Conversely, an analysis of proximate causation is uniformly objective in nature, and does not account for differences between adults and children.

### Delaware Statute
### Comparative Negligence of
### Children and Adults

 This Court has interpreted the Delaware comparative negligence statute as contemplating an apportionment of negligence based upon proximate causation. *See Koutoufaris v. Dick*, Del.Supr., 604 A.2d 390, 398 n. 6 (1992) (stating that secondary assumption of risk, or other forms of plaintiff negligence, "to a level greater than a defendant's primary negligence, may constitute *proximate cause* sufficient to bar recovery") (emphasis added). Pursuant to the Delaware statute, the apportionment of comparative negligence is a "separate consideration" which should be examined by the trier of fact only after the elements of each actor's individual negligence (duty, breach of duty, and proximate causation) have first been determined. *See Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1099 (1991). That is, after the trier of fact finds that two or more actors were independently negligent, the amount of negligence attributed "comparatively" to each actor is determined based upon the extent to which their respective negligent conduct contributed to the occurrence of the harmful event. 10 *Del.C.* § 8132.

 Thus, the Delaware comparative negligence statute apportions liability on the basis of the extent of each actor's contribution to the injurious result, i.e. proximate causation. Proximate causation is predicated upon an objective analysis of the circumstances surrounding the actions of one or more persons, to determine whether without such action the injury would not have occurred. It follows logically that a single objective standard should be applied under Delaware law in the apportionment of comparative negligence between two or more proximate causes of an injury. Consequently, although the negligence of children and adults is determined by a separate standard of care, no separate standard is applicable to children in apportioning the relative causative effect of an adult's and a child's combined negligence under the Delaware comparative negligence statute. 10 *Del.C.* § 8132.

### Child and Adult in This Case
### Apportionment of Comparative
### Negligence

 Under Delaware law, the trier of fact must conclude that at least two parties

---

1. However, subsequent to its decision in *Brice*, the Wisconsin Supreme Court expressed the view that

 [w]hat is contemplated by our comparative negligence statute is that the totality of the casual [sic] negligence present in the case will be examined to determine the contribution each party has made to that whole. *It is the respective contributions to the result which determine who is most negligent, and by how much.*

 *Cirillo v. City of Milwaukee*, 34 Wis.2d 705, 150 N.W.2d 460, 466 (1967) (emphasis added) (quo-

 tations and citation omitted). Nevertheless, in *Cirillo*, the Wisconsin Supreme Court reiterated its view that "the age of the respective parties is a relevant consideration in comparing their negligence." *Id.* 150 N.W.2d at 465–66. To the extent that the *Cirillo* decision thereby implies that proximate causation may be apportioned in accordance with a subjective standard (i.e., considering a child's age, maturity, and experience), it is inconsistent with our conclusions in this case regarding the law of Delaware.

*each* failed to satisfy the requisite standard of care and was a proximate cause of the resultant injury, i.e., *each* was negligent, *before* undertaking any analysis of their comparative negligence. 10 *Del.C.* § 8132. The Superior Court judge properly distinguished these two separate stages of his analysis: negligence and comparative negligence. He also decided those issues in the appropriate sequence. First, he concluded that "both Mr. Moffitt and the minor plaintiff [Carroll] were negligent each in a manner which was a proximate cause of the accident." *Only then* did the Superior Court judge proceed with the second stage of his analysis, which required a comparative apportionment of negligence between Moffitt and Carroll.

Understood in context, the Superior Court judge's statement that "[t]he degree of [Carroll's] negligence is reduced as a result of his being only seven and one-half years of age" simply reiterates that a separate standard of care was properly applied by the trial judge, because of Carroll's young age, only as a subpart (standard of care) of the first stage of his analysis (negligence) in determining whether Carroll was negligent. This contextual reading is supported by the fact that the sentence which precedes the above-quoted language is the one in which the judge announced this conclusion: "[Carroll] was contributorily negligent by failing to see the car." Thus, the record reflects that the Superior Court judge did not apply a separate standard in the second stage of his analysis, which required him to determine the relative causative effect of the child's [Carroll's] and the adult's [Moffitt's] combined negligence.

■ Accordingly, the Superior Court committed no error of law in the apportionment of comparative negligence between Moffitt and Carroll. The Superior Court's finding that Moffitt was 80 percent at fault and Carroll 20 percent at fault is supported by the record and was the result of an orderly and logical deductive process. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972). Therefore, the Superior Court's decision on the apportionment of comparative negligence is affirmed.

### Nonjury Trial
### Reduction of Damage Award

■ Carroll contends that the Superior Court abused its discretion in its July 19, 1993 order by recalculating Carroll's damages and awarding a lesser amount. In support of this contention, Carroll cites a number of decisions by this Court concerning the standards that trial courts should apply in ordering remittitur of allegedly excessive damage verdicts. *See, e.g., Stewart v. Genesco, Inc.*, Del.Supr., 406 A.2d 25, 26 (1979); *Dolinger v. Scott & Fetzer Co.*, Del.Supr., 405 A.2d 690, 692 (1979); *Storey v. Castner*, Del. Supr., 314 A.2d 187, 193 (1973). Each of the decisions cited by Carroll involved an examination of the damages awarded in a *jury* verdict, rather than, as here, a trial court's reexamination of its *own* previous factual determinations on the proper amount of damages.[2]

■ A trial court's reduction of its own damage award does not constitute a "remittitur." Remittitur is a procedural device generally used in connection with jury verdicts. 6A Moore's Federal Practice ¶ 59.-08[7], at 186–87 (2d ed. 1994).[3] In Delaware,

---

2. In ordering remittitur of a jury's award of damages, the trial court must determine whether the verdict was "so grossly excessive as to shock the Court's conscience and sense of justice," and this Court reviews such a determination by the trial court for abuse of discretion. *Stewart v. Genesco, Inc.*, 406 A.2d at 27. The same rules of law are applied by this Court to a trial court's finding that a jury verdict is excessively low. *Id.* at 26 n. 1 (citing *Mills v. Telenczak*, Del.Supr., 345 A.2d 424, 426 (1975); *Di Bioia v. Schetrompf*, Del.Super., 251 A.2d 569, 570–71 (1969)).

3. In ordering remittitur of a jury's award of damages, the trial court is required to allow the

plaintiff the option either to remit the stated portion of the damage judgment or to submit to a new trial. *See Riegel v. Aastad*, Del.Supr., 272 A.2d 715, 718 (1970). However, the trial court need not give the plaintiff the option of a new trial when the court has reduced its own prior damage award. *See Horvath v. Spector Freight System, Inc.*, 102 Ill.App.2d 112, 243 N.E.2d 471 (1968). For this reason, *inter alia*, it appears that a trial court's reduction of its damage award to a plaintiff should not be characterized as "remittitur."

We note, nevertheless, that at the appellate level the reduction of a damage judgment is properly referred to as "remittitur" whether the trier of fact was the trial court or a jury:

trial courts "have long had the inherent power to vacate, modify or set aside their judgments or orders during the term in which they were rendered." *Tyndall v. Tyndall,* Del.Supr., 214 A.2d 124, 125 (1965) (citing 1 Woolley on Delaware Practice § 838).

■ In the case *sub judice,* the trial judge modified his own findings of fact in order to correct the amount of damages awarded to Carroll, based upon the trial judge's own prior misapprehension of the evidence. This Court first reviews such modifications to determine whether the corrections are supported by the record. This Court must then determine whether the trial judge's modified conclusion, which followed from an accurate understanding of the correct factual predicate, was the result of an orderly and logical deductive process. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972). *Compare Turner v. Vineyard,* Del. Supr., 80 A.2d 177, 179 (1951).

■ The record reflects that the Superior Court judge relied upon pages 21 and 22 of the transcript, as the factual predicate for his modified decision. On those pages, Brent Noyes, M.D. stated: "If for some small reason he would have a leg length discrepancy, *which I'm not certain he has,* he would be followed say at age ten, eleven and twelve, and they might try to adjust that leg length discrepancy either by closing the growth in one leg or the other, *but that I think is a very small possibility"* (emphasis added). The Superior Court explained the basis for the reduction in damages in its July 19, 1993 order:

> The Court considered in its [January 7, 1993] decision the likelihood of a minor shortening of the affected leg in later life because of the fractured femur. This had not been specifically enumerated in the decision but had been a consideration interpreted from the court notes that refer to Dr. Brent Noyes' testimony.

The transcript supplied to the Court by [Moffitt's] counsel indicates that the chances of a shortening is a small possibility such that it could be classified as remote. This small possibility is borne out by the absence of any shortening problem at trial time, a half decade after the accident. Even though I originally gave some weight to very little shortening; it was not an inconsequential consideration.

The Superior Court judge's factual determination that his previous misunderstanding of the record had resulted in an increased damage award to Carroll is supported by the record. The trial judge's decision to modify his original damage award was the product of an orderly and deductive reasoning process. *Levitt v. Bouvier,* 287 A.2d at 673. *See Turner v. Vineyard,* 80 A.2d at 179. Therefore, this Court will not disturb the Superior Court's finding that the appropriate compensation for Carroll was a total of $70,000, rather than $80,000. Accordingly, as a result of Carroll's own 20 percent negligence, the Superior Court's ultimate reduction of its award of damages to $56,000 is affirmed.

### *Interest on Judgment Accrues from Date of Entry*

The third and final issue raised in this appeal concerns the Superior Court's decision to change the date from which interest should accrue on the plaintiff's judgment from the date of the entry of judgment (January 7, 1993) to the date of the amendment of the judgment (July 19, 1993). Carroll contends that the Superior Court erred as a matter of law in so modifying its judgment.

■ The right to interest on money judgments is secured by the common law of Delaware. *Missouri–Kansas Pipe Line Co. v. Warrick,* Del.Supr., 22 A.2d 865, 868 (1941). In *Warrick,* this Court held that a decree in the Court of Chancery bears inter-

---

Remittitur is also used by the appellate courts in both jury and non-jury actions, and, in jury actions, mainly when there has been reversible error committed at the trial, such as erroneous admission of evidence or erroneous instructions, and the maximum effect upon the amount of the verdict due to the error can with reasonable accuracy be determined.

6A Moore's Federal Practice ¶ 59.08[7], at 187–88 (2d ed. 1994). However, it is generally unnecessary for an appellate court to allow the plaintiff the option of a new trial on damages in reviewing a bench trial if the record is sufficient for the purpose of ordering a reduced amount. 6A Moore's Federal Practice ¶ 59.08[7], at 211–12.

est from the date of its entry, by analogy to judgments in actions at law. *Id.* at 868–69. This Court subsequently stated that "[i]nterest is awarded in Delaware as a matter of right and not of judicial discretion." *Moskowitz v. Mayor & Council of Wilmington,* Del.Supr., 391 A.2d 209, 210 (1978). In *Moskowitz,* we explained that

> [a]s a general rule, interest accumulates from the date payment was due the plaintiff, because full compensation requires an allowance for the detention of the compensation awarded and interest is used as a basis for measuring that allowance.

*Id.*

 In the Superior Court, Moffitt contended that the July 19, 1993 order was, in effect, a remittitur "because it decreased the amount of the award to plaintiff," and that interest does not accrue in the context of a remittitur "until the reduced award takes effect through the parties' manifestations of consent and entry of an order to that effect." Moffitt supported this contention with a citation to *Stewart v. Storm's Shoes, Inc.,* Del. Supr., 426 A.2d 839, 841 (1981). As the Superior Court correctly recognized in the August 13, 1993 order, Moffitt's reliance upon *Stewart* was misplaced because the judge's reduction of Carroll's award of damages did not constitute a remittitur. Nevertheless, the Superior Court judge changed the date on which interest accrued to July 19, 1993. That action by the Superior Court constituted an error of law.

Procedurally, in ordering a remittitur, the trial judge *vacates* the original judgment and offers the plaintiff the option of either accepting a new judgment, with a reduced amount of damages, or submitting to a new trial. *See Stewart v. Genesco, Inc.,* 406 A.2d at 26–27. In contrast, in the case *sub judice* the Superior Court judge *amended* rather

than vacated the judgment entered on January 7, 1993 to reflect the judge's correction of a prior misunderstanding of the factual record. The effect of the July 19, 1993 order with regard to interest was simply to quantify the correct amount of damages to which Carroll's legal right to interest had attached as of the entry of judgment on January 7, 1993. *See Missouri–Kansas Pipe Line Co. v. Warrick,* 22 A.2d at 868.

The unmodified portion of the judgment of the Superior Court entered on January 7, 1993 had an inchoate "binding effect" upon Moffitt from that date and continued to remain vested for Carroll. *Compare Stewart v. Storm's Shoes, Inc.,* 426 A.2d at 841. Consequently, when the Superior Court judge denied the motion for a new trial and reduced the amount of damages awarded in the July 19, 1993, order, the judge properly awarded accrued interest on the reduced net recovery of $56,000 as of the date of the entry of judgment. Therefore, the Superior Court erred, as a matter of law, in modifying the July 19, 1993 judgment. Carroll is legally entitled to interest on the judgment of damages, $56,000, from the date of the original nonjury verdict and the entry of judgment, January 7, 1993.[4]

### Conclusion

The judgment of the Superior Court is AFFIRMED in part and REVERSED in part. This matter is remanded to the Superior Court for further proceedings consistent with this opinion.

---

**4.** The record reflects that the date of the Superior Court's decision after the trial was January 7, 1993. The trial concluded on January 5, 1993. In its July 19, 1993 order, the Superior Court erroneously stated that interest should accrue starting January 5, 1993, rather than on the date of the judgment, January 7, 1993. In its August 13, 1993 order, the Superior Court stated that "[t]he new July 19, 1993 judgment recited that

interest would run on the new judgment *from the date of the original trial date—January 7, 1993*" (emphasis added). Of course, the Superior Court then modified its July 19, 1993 order to change the effective interest date to July 19, 1993. Because this modification was improperly granted, the actual date of the judgment—January 7, 1993—should be the date from which interest owed to Carroll should be calculated.