IN THE SUPREME COURT OF THE STATE OF DELAWARE

DELAWARE TECHNICAL & COMMUNITY COLLEGE, §§§

§ No. 553, 2014

Defendant-Below, §
Appellant. §

§ Court Below:
§ Superior Court of the
v. § State of Delaware, in and for
§ Sussex County

EMORY HILL & COMPANY §
§ C.A. No. S12C-08-032 THG

Plaintiff-Below, §
Appellee. §

Submitted:  June 10, 2015
Decided:  July 7, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

## **O R D E R**

This 7th day of July 2015, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    On February 18, 2014, a jury found that both Appellant Delaware Technical & Community College ("DTCC") and Appellee Emory Hill & Company ("Emory Hill") had breached their contractual obligations to each other.  Both parties filed motions for attorneys' fees, interest, and costs.  On May 7, 2014, the Superior Court awarded Emory Hill attorneys' fees because it deemed Emory Hill

to be the prevailing party in the breach of contract action, and rejected DTCC's motion (the "May Opinion").[1] The May Opinion was silent on the issue of interest. On July 15, 2014, Emory Hill filed a motion to recover pre- and post-judgment interest and additional attorneys' fees (the "July Motion"), which the Superior Court granted on August 29, 2014 (the "August Opinion").[2]

(2)	DTCC raises several arguments on appeal. First, it argues that Emory Hill's July Motion was untimely under Superior Court Rule of Civil Procedure 59(d) ("Rule 59(d)") and under Superior Court Rule of Civil Procedure 59(e) ("Rule 59(e)"). Second, it argues that Emory Hill failed to comply with 29 *Del. C.* § 6516(f)(4). Third, it argues that the Trial Court erred in setting the rate at which pre- and post-judgment interest would accrue. In addition to responding to the merits of DTCC's claims, Emory Hill argues that this Court should find that DTCC waived its arguments on the rate at which interest should accrue. For the reasons stated herein, we AFFIRM the judgment below.

(3)	On June 29, 2010, DTCC and Emory Hill entered into a contract (the "Contract"), which was amended on July 1, 2014 (the "Amended Contract"), to construct a building on DTCC's campus. The Contract provided that outstanding

---

[1] *Emory Hill & Co. v. Del. Technical & Cmty. Coll.*, C.A. No. S12C-08-032 DI 38 (Del. Super. May 7, 2014) [hereinafter *May Opinion*].

[2] *Emory Hill & Co. v. Del. Technical & Cmty. Coll.*, C.A. No. S12C-08-032 DI 52 (Del. Super. Aug. 29, 2014) [hereinafter *August Opinion*].

payments would be subject to a monthly interest rate of 1%, not to exceed 12% per year (the "Contract Rate"). The parties were also bound by two other agreements, the General Conditions of the Contract for Construction (the "General Conditions") and the General Construction Contract and Specifications (the "Contract Specifications"), which governed, among other things, claims procedures.

(4)   The Contract Specifications provided that the "Contract Sum and Completion Date shall be adjusted only by a fully executed Change Order." The Amended Contract provided that DTCC "shall not be liable for payment of any change order that has not received prior written authorization." The agreement between the parties also required that Emory Hill submit an "Application for Payment" consistent with 29 *Del. C.* § 6516(f)(4)(a) when requesting payments.

(5)   On February 11, 2011, Emory Hill submitted a change request for additional compensation and time due to construction delays (the "Change Request"). DTCC rejected the Change Request on July 27, 2011. Because the Change Request was denied, Emory Hill did not submit an Application for Payment.

(6)   On August 22, 2012, Emory Hill filed a complaint in the Superior Court against DTCC for, among other things, breach of contract. On October 1, 2012, DTCC filed its answer and asserted a counterclaim against Emory Hill for

3

liquidated damages stemming from Emory Hill's delay in completing the construction project. On February 18, 2014, the jury found that Emory Hill was entitled to $54,548.12 of the $59,996.71 it claimed as damages, and that DTCC was entitled to $2,900 of the $19,500 it claimed as liquidated damages.

(7)     On March 4, 2014, Emory Hill filed a timely motion under Superior Court Rule of Civil Procedure 54(f)[3] to collect attorneys' fees, costs, and interest at the Contract Rate as the prevailing party. DTCC responded on March 12, 2014, and contended that "a more accurate and reasonable characterization of this litigation is that it was a 'draw' in which neither party 'prevailed' nor 'lost' as a result of the verdicts entered by the jury." In its response, DTCC did not object to the application of the Contract Rate to calculate the interest award.

(8)     On March 6, 2014, DTCC filed its own motion under Rule 54(d) for attorneys' fees, costs and interest. DTCC contended that "[p]ursuant to Section 8.2 of the contract for construction, payments due and unpaid bear interest at an annual

---

[3] Emory Hill's reference to Super. Ct. R. Civ. P. 54(f) was incorrect. The motion should have been made pursuant to Super. Ct. R. Civ. P. 54(d). *Compare* Super. Ct. R. Civ. P. 54(d) ("Costs. Except when express provision therefor is made either in a statute or in these Rules or in the Rules of the Supreme Court, costs shall be allowed as of course to the prevailing party upon application to the Court within ten (10) days of the entry of final judgment unless the Court otherwise directs."), *with* Super. Ct. Civ. P. 54(f) ("Court reporter fees. The fees paid court reporters for the Court's copy of transcripts of depositions shall not be taxable costs unless introduced into evidence. Fees for other copies of such transcripts shall not be taxable costs. The production and playback costs associated with any videotape deposition may also be taxable as costs if the video deposition is introduced into evidence.").

4

rate of 12% or 1% per month. In the alternative, pursuant to 6 *Del. C.* § 2301, the lawful rate of interest is 5% over the Federal Reserve discount rate. . . ." Emory Hill responded on March 20, 2014, and argued, among other things, that DTCC's motion was untimely pursuant to Rule 54(d) because the motion was filed more than ten days after the final judgment. It contended that for DTCC's motion to be timely, the motion should have been filed on or before March 4, 2014, two days before DTCC actually filed its motion.

(9)     On May 7, 2014, the Trial Court found that Emory Hill was the sole prevailing party and was entitled to reasonable attorneys' fees and costs. Despite both parties having sought pre- and post-judgment interest, the May Opinion was silent on the issue of interest.

(10)    On June 11, 2014, DTCC sent Emory Hill a letter and two checks "in payment of the judgment, interest and attorneys' fees." DTCC calculated "post-judgment interest at the legal rate of 5.07% ($7.174 per day) from February 18, 2014 through June 6, 2014." The letter enclosed an additional check for $50.22 representing "additional post-judgment interest through June 13th." The letter did not address pre-judgment interest.

(11)    On July 15, 2014, Emory Hill filed a motion to modify the judgment to seek unpaid pre- and post-judgment interest, and an award for additional

5

attorneys' fees.[4]  In its July Motion, Emory Hill argued, among other things, that the interest DTCC was required to pay must be computed at the Contract Rate as opposed to the legal rate.[5]  After DTCC filed a response on August 8, 2014, the Superior Court held a hearing on August 26, 2014 (the "August Hearing").[6]  On August 29, 2014, the Superior Court awarded Emory Hill interest calculated using the Contract Rate, and additional attorneys' fees.

(12)  Notwithstanding that its own March 6, 2014, motion was unquestionably late, DTCC now argues that Emory Hill's July Motion was untimely because it was filed more than ten days after the May Opinion as required by Rule 59(d) (for motions to alter or amend a judgment),[7] and more than five days after the May Opinion as required by Rule 59(e) (for motions to reargue a judgment).[8]  Superior Court Rule of Civil Procedure 6(b) provides that the

---

[4] Again, Emory Hill filed the motion pursuant to Super. Ct. R. Civ. P. 54(f).  However, the pertinent rule was Super. Ct. R. Civ. P. 54(d) (addressing motions to alter or amend a judgment).

[5] 6 *Del. C.* § 2301(a) ("Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time.").

[6] Transcript of Proceedings, *Emory Hill & Co. v. Del. Technical & Cmty. Coll.*, C.A. No. S12C-08-032 DI 57 (Del. Super. Aug. 26, 2014) [hereinafter *August Hearing*].

[7] Super. Ct. R. Civ. P. 59(d) ("Motion to alter or amend a judgment. A motion to alter or amend the judgment shall be served and filed not later than 10 days after entry of the judgment.").

[8] Super. Ct. R. Civ. P. 59(e) ("Rearguments. A motion for reargument shall be served and filed within 5 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 5 days after service of such motion, the opposing

6

Superior Court may not extend the time for taking action under Rules 59(d) or 59(e).[9]

(13) The Superior Court noted that Emory Hill had filed a timely application on March 4, 2014 following the jury verdict in which "[i]t asked to be awarded pre- and post-judgment interest at the contract rate, as well as attorneys' fees."[10] Thus, the Trial Court "consider[ed] the subsequent [July Motion] to modify merely as revisiting what the Court did not decide earlier."[11]

(14) We review the Superior Court's decision to revisit and modify its earlier ruling to determine whether the modifications are supported by the record.[12] We then determine whether the Superior Court's modified decision was the product of an orderly and logical deductive process.[13]

---

party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted. A copy of the motion and answer shall be furnished forthwith by the respective parties serving them to the Judge involved.").

[9] *See* Super. Ct. R. Civ. P. 6(b) (providing that the Superior Court "may not extend the time for taking any action under Rules 50(b) . . . 59(b), (d) and (e), 60(b), except to the extent and under the conditions stated in them").

[10] *August Opinion* at *2.

[11] *August Opinion* at *2-3.

[12] *Moffitt v. Carroll*, 640 A.2d 169, 176-77 (Del. 1994) ("In Delaware, trial courts have long had the inherent power to vacate, modify or set aside their judgments or orders during the term in which they were rendered." (internal citation and quotations omitted)).

[13] *Id.* (citing *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972)).

(15) In its response to Emory Hill's March 4, 2014, motion, DTCC appeared to take issue only with the claim that Emory Hill was the prevailing party. DTCC did not argue that the interest rate sought by Emory Hill was incorrect. In fact, DTCC also sought interest computed at the Contract Rate in the event that the Superior Court were to rule in its favor. Thus, it appears that the Superior Court assumed that the interest rate was not in dispute, and that the parties would resolve the calculations on their own.[14] The Superior Court's apparent belief is reflected in its statement in the May Opinion that "[t]he questions to be answered in this decision are as follows: (1) is there one prevailing party or because each obtained an award are there two prevailing parties; and (2) should attorney's fees be awarded on a winner takes all basis, or a more balanced application."[15]

(16) In addition, the Superior Court's August Opinion suggests that it was modifying or correcting its earlier ruling, which had been based upon its incorrect assumption that the parties would "crunch the numbers" themselves. Accordingly,

---

[14] The Superior Court stated at the August 26, 2014 hearing that, "And I will be quite honest with you, it wasn't included in the decision of May 7th . . . because in 25 years, I have never had, when prejudgment interest and post-judgment interest has been prayed for and there is a judgment, I have never had anybody refuse not to calculate it." *August Hearing* at *2. The Trial Judge noted further that "I literally assumed that after I made the determination on who was the prevailing [party] and set the attorney's fees, the two of you would sit down with a calculator and could figure out what it would be." *August Hearing* at *9.

[15] *May Opinion* at *3.

the record fully supports the conclusion that the Superior Court was revisiting the interest issue that Emory Hill had timely raised, but which the court mistakenly thought the parties would resolve without judicial assistance. The revisitation was due largely to DTCC's own conduct in advocating (in an untimely fashion) for, or at a minimum, not objecting to the application of the Contract Rate. Although we address the substantive interest issues below, we find no fault with the Superior Court's conclusion that DTCC's "Contract Rate" arguments "come too late in the game."

(17) DTCC argues that Emory Hill was required to submit an "Application for Payment" in order to trigger DTCC's obligation to pay. Because Emory Hill did not submit an Application for Payment after filing the Change Request, DTCC contends that Emory Hill is prohibited by 29 *Del. C.* § 6516(f)(4) from seeking interest from DTCC.[16]

---

[16] *See* 29 *Del. C.* § 6516(f)(4)(a) ("If a *progress payment* to a contractor is delayed by more than 21 days *after the date of the agency agent's approval* or the final payment to a contractor is delayed by more than 60 days after the date of the final submission, the contractor may require the payment of interest by such agency, except for periods of time during which payment is withheld pursuant to paragraph (f)(2) of this section, beginning on the twenty-second day for progress payments and on the sixty-first day for final payment; provided, however, that: *Presentment is deemed made when an invoice or bill is received by that agency or agency agent, provided that the invoice or bill is received in a form consistent with the State Accounting Manual* and regulations issued by the Director of the Office of Management and Budget and the Secretary of Finance. Such forms shall be included in the project's bid documents." (emphasis added)).

(18) Questions of statutory interpretation are questions of law subject to *de novo* review.[17] Factual findings are reviewed for clear error.[18]

(19) On February 11, 2011, Emory Hill submitted the Change Request, which was consistent with the contract requirements and was submitted in the same format as eleven previous change orders.[19] DTCC rejected the Change Request. The Superior Court noted "that due to the contract dispute in which DTCC was found to be at fault, it would have been futile for Emory Hill to have invoiced DTCC [through an Application for Payment] for interest on a claim DTCC refused to pay." Obtaining an *approved* Change Request was a necessary precondition to submitting an Application for Payment. Thus, we find no error in the Superior Court's determination that submitting an Application for Payment by Emory Hill would have been futile.

(20) Emory Hill also argues that 29 *Del. C.* § 6516(f)(4) should not apply because the statute only applies to outstanding "progress payments" and not to breach of contract damages. Section 6516(f)(4) provides that "[i]f a *progress payment* to a contractor is delayed," then "the contractor *may* require the payment

---

[17] *Dambro v. Meyer,* 974 A.2d 121, 129 (Del. 2009).

[18] *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[19] The eleven previous change orders were each individually approved by DTCC, and only after their approval did Emory Hill submit an Application for Payment for each change order.

of interest. . . ."[20]  Because the Change Request was never approved and no Application for Payment was submitted, there was no outstanding progress payment due to Emory Hill.  Rather, the interest Emory Hill sought was interest on the damages awarded by the jury to Emory Hill for DTCC's breach of contract. Thus, the Trial Court was correct in concluding that Emory Hill was entitled to pre- and post-judgment interest as a matter of right.[21]

(21)  Lastly, DTCC argues that if Emory Hill is entitled to an award of interest, it should be computed at the rate for public works contracts as provided by 29 *Del. C.* § 6516(f)(4)(d), specifically "at a rate not to exceed 2 percent above the prime interest rate as established by the Federal Reserve."[22]  DTCC further contends that any post-judgment interest should not be computed at the Contract Rate because the legal rate of post-judgment interest is statutorily capped by 6 *Del. C.* § 2301(a) at "5% over the Federal Reserve discount rate."[23]

(22)  As stated above, statutory interpretation is a question of law and is subject to *de novo* review.[24]  Factual findings are reviewed for clear error.[25]

---

[20] 29 *Del. C.* § 6516(f)(4) (emphasis added).

[21] *See Brandywine Smyrna, Inc. v. Millennium Builders*, 34 A.3d 482, 485 (Del. 2011) (citing *Moskowitz v. Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)).

[22] 29 *Del. C.* § 6516(f)(4)(d).

[23] 6 *Del. C.* § 2301(a).

[24] *Dambro,* 974 A.2d at 129.

[25] *Osborn*, 991 A.2d at 1158.

(23)    Section 6516(f)(4)(d) of Title 29 provides that "[a] contractor *may* require that interest under this subsection accrue on the unpaid balance at a rate not to exceed 2 percent above the prime interest rate as established by the Federal Reserve."[26]  Here, the interest Emory Hill sought was with respect to damages for its breach of contract claim, not outstanding progress payments.  In any event, § 6516(f)(4) does not preclude parties from negotiating an express contract rate of interest in excess of the legal rate.  Rather, it limits the rate of interest a contractor may charge in the absence of a contractually agreed upon rate.

(24)    We also reject DTCC's claim that 6 *Del. C.* § 2301(a) provides the applicable rate of post-judgment interest, as opposed to the Contract Rate:

> Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. *Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.*[27]

---

[26] 29 *Del. C.* § 6516(f)(4)(d).

[27] 6 *Del. C.* § 2301(a) (emphasis added).

The last sentence (italicized) was added by the General Assembly in 2012.[28]  The synopsis of Senate Bill 85 provides the purpose of the enactment:

> This bill clarifies that the applicable post-judgment interest rate on any judgments entered *in cases of personal loans* is the lesser of the legal interest rate or the contract rate. This bill does not affect the usury statute or other special circumstances contemplated by current law.[29]

(25)   The synopsis suggests that the Legislature intended for § 2301(a) to cap post-judgment interest only in cases of personal loans to the lesser of the legal rate under § 2301(a) or the contractual rate.  Because Emory Hill does not seek interest due for the failure to pay a personal loan, the Contract Rate applies to the accrual of post-judgment interest.[30]  DTCC should not be heard to complain given its own assertions that the Contract Rate might apply.  Based upon the record before us, we find no error in the Superior Court's modified ruling, and conclude that it was the product of an orderly and logical deductive process.

---

[28] 78 *Del. Laws*, ch. 222 (2012).

[29] Del. S. B. 85 syn., 146th Gen. Assem., 78 *Del. Laws*, ch. 222 (2012) (emphasis added).

[30] *Cf. Sequoia Presidential Yacht Group LLC v. FE Partners*, 2014 WL 2610577 (Del. Ch. Jun. 12, 2014) (finding that the April 5, 2012 amendment to 6 *Del. C.* § 2301 applied to a loan agreement, but fell under the subsection (c) exception "for for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of any borrower" (quoting 6 *Del. C.* § 2301(c))); *Midland Funding, LLC v. Carrion*, 2013 WL 8845053, at *2 (Del. Com. Pl. Oct. 25, 2013) ("The April 5, 2012, amendment to 6 *Del. C.* § 2301, restricting the award of post judgment interest to 5% over the Federal Reserve discount rate, applies only to personal loans, not to revolving lines of credit.").

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice