**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: May 26, 2020
Date Decided: June 11, 2020

Rudolf Koch, Esquire
Matthew W. Murphy, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

T. Brad Davey, Esquire
Matthew F. Davis, Esquire
Andrew H. Sauder, Esquire
Caneel Radinson-Blasucci, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

Re:  *Manichaean Capital, LLC v. SourceHOV Holdings, Inc.*
C.A. No. 2017-0673-JRS

Dear Counsel:

In this statutory appraisal proceeding, Respondent, SourceHOV Holdings,

Inc. ("SourceHOV" or the "Company"), has moved for a new trial under Court of

Chancery Rule 59(a) (the "Motion")[1] following the Court's January 30, 2020, post-

---

[1] *See* Resp't's Mot. for a New Trial (D.I. 117).

trial Memorandum Opinion (the "Opinion").[2]  In the Opinion, I determined the fair value of SourceHOV at the time of the Merger was $4,591 per share.[3]  This determination was based, in part, on my determination that SourceHOV's "fully 'diluted' share count" was 157,249 shares as of the applicable valuation date.[4]

One of the key disputes at trial was whether SourceHOV's Restricted Stock Units ("RSUs") should be included in the share count.[5]  This question was important because a higher share count would dilute the holdings of SourceHOV's stockholders, including Petitioners.[6]  After deliberating the evidence, I found Petitioners' expert credibly testified that the RSUs should *not* be included in the share count because, immediately before the Merger, it was entirely speculative

---

[2] *Manichaean Capital, LLC v. SourceHOV Hldgs., Inc.*, 2020 WL 496606, at *2 (Del. Ch. Jan. 30, 2020); Ct. Ch. R. 59(a).

[3] *Manichaean Capital*, 2020 WL 496606, at *1–2.  I use the same conventions and definitions here as were used in the Opinion.

[4] *Id.*, at *26.

[5] *Id*.

[6] *Id.*

whether "RSUs granted under the Company's Long-Term Incentive Plan (the 'Plan') . . . would vest" and thereby "dilute the holdings of existing stockholders."[7]

In the Motion, SourceHOV asks that I convene a new trial to allow it to present new evidence "showing all RSUs outstanding as of the [Merger] have vested and have settled (or are in the process of settling) into units."[8] Based upon this "new evidence," the Company maintains it is "incontrovertible" that the Court should revise its previously under-stated share count.[9] After carefully considering the Motion, I am satisfied it must be denied because the ostensibly "new" evidence upon which SourceHOV relies would not change the trial's outcome and is not new at all; it was reasonably available to the Company at trial.

---

[7] *Id.*

[8] Motion at 5.

[9] *Id.* at 11.

## I.  BACKGROUND

SourceHOV was a Delaware corporation that provided process outsourcing and financial technology services within several industries.[10]  Petitioners, Manichaean Capital, LLC, Charles Cascarilla, Emil Khan Woods, LGC Foundation, Inc. and Imago Dei Foundation, Inc. (collectively, "Manichaean"), were SourceHOV stockholders at the time of the Merger.[11]  They properly perfected their right to appraisal of their SourceHOV shares under 8 *Del. C.* § 262, and the Court conducted a trial for that purpose last year.

As noted, at trial, the parties disputed whether SourceHOV's RSUs should be included in the share count.[12]  The RSUs were subject to forfeiture under the Plan based on contingencies such as death and termination of employment with SourceHOV.[13]

---

[10] *Manichaean Capital*, 2020 WL 496606, at *2.

[11] *Id.*

[12] *Id.*, at *26.

[13] *Id.*

SourceHOV offered evidence that historically, despite the conditions to which the RSUs were subject, approximately 95% of unvested RSUs vested within a two-year period.[14] On the other hand, Manichaean's expert, Timothy J. Meinhart, opined the RSUs should be excluded from the share count because, *as of the* Merger, it was "at best, speculative" whether the RSUs would vest and actually dilute SourceHOV's existing stockholders' holdings.[15] Upon deliberating the evidence, I found Meinhart's testimony in this regard to be credible.[16]

After the Opinion issued, SourceHOV filed a Motion for Reargument (the "Reargument Motion").[17] In the Reargument Motion, SourceHOV advanced a previously-unarticulated distinction between (i) issued and outstanding shares of SourceHOV's stock, (ii) vested but unsettled RSUs ("unsettled RSUs") and

---

[14] *Id.*; Motion at 2.

[15] *Manichaean Capital*, 2020 WL 496606, at *26.

[16] *Id.*

[17] D.I. 111.

(iii) unvested RSUs.[18]  As to the first category, SourceHOV did not (and still does not) dispute that the Court correctly calculated the issued and outstanding shares of SourceHOV's stock (i.e., 157,249 shares).[19]  The Reargument Motion focused on a newly-articulated distinction between the second and third categories.  In advancing this new argument, SourceHOV candidly admitted "it did not present the issue of including [unsettled] RSUs in the fully-diluted share count in its trial briefs, expert reports, or at trial."[20]

To understand the distinction SourceHOV asked the Court to draw in the Reargument Motion, it is useful to trace the means by which RSUs convert into outstanding shares of stock.  As addressed in the Opinion, RSUs begin in an "unvested" state.[21]  This means they are subject to forfeiture under the Plan if, for

---

[18] Reargument Motion at 4, 6.

[19] Reargument Motion at 3; Motion at 4 ("[T]he Court is correct that Exela reported Respondent's total shares outstanding as of June 30, 2017 as 157,249."); *Manichaean Capital*, 2020 WL 496606, at *26.

[20] Reargument Motion at 2.

[21] *Manichaean Capital*, 2020 WL 496606, at *26.

example, the holder dies or leaves her employment with the Company.[22] If none of

the forfeiture conditions come to pass, then, and only then, will the RSUs vest.

At trial, the parties presented the Court with a binary choice—either include

or exclude unvested RSUs in the share count.[23] Neither party mentioned, much less

explored, unsettled RSUs.[24] SourceHOV has now sought to provide more nuance

by explaining that RSUs may *vest* but not yet convert into a share of stock

(i.e., *settle*).[25] From this unsettled state, I gather RSUs can settle and convert into

outstanding shares of stock under conditions provided in the Plan.[26] In the

Reargument Motion, SourceHOV maintained there were 14,665 shares in the second

---

[22] *Id.*

[23] *Id.*; JX 340 at 97 ("Jarrell Rept."); Resp't's Post-Trial Opening Br. (D.I. 95) at 69 ("As of the appraisal date, there were 8,887 outstanding RSUs that entitled their owners to shares upon vesting.").

[24] Resp't's Reply in Further Supp. of its Mot. for a New Trial ("Reply") (D.I. 120) at 5.

[25] Reargument Motion at 4; Motion at 4 (explaining that "the vested RSUs do not settle (that is, are not exchanged for equity) immediately upon vesting, but rather on the earlier to occur of a change in control or on the fourth or fifth anniversary of the grant date") (citing JX 265).

[26] Reargument Motion at 4.

category (i.e., unsettled RSUs) that should have been included in the share count.[27]

Ultimately, I denied the Reargument Motion because the distinction between unsettled RSUs and unvested RSUs should have been raised, if at all, before trial.[28]

Moreover, unsettled RSUs appeared to be subject to many of the same contingencies as unvested RSUs, which, according to Meinhart's credible testimony, would render them unsuitable for inclusion in the share count.[29]

---

[27] *Id.* at 5. I note that the extent to which SourceHOV believes the Company's share count has been under-counted has been a moving target. *Compare* Reargument Motion at 7–8 (arguing "14,655" of the Company's "vested" (but unsettled) RSUs were wrongfully excluded from the Company's share count, resulting in a $4,039,168 "windfall"), *with* Motion at 3 (arguing "16,840 RSUs that were vested as of the Closing should have been included in the share count" resulting in a "$5,591,466" windfall to Manichaean). I do not attempt to reconcile this disconnect as I am persuaded that nothing would have prevented the Company from raising the issue of how (and whether) to include unsettled RSUs in the Company's share count prior to or during trial.

[28] *Manichaean Capital LLC v. SourceHOV Hldgs., Inc.*, 2020 WL 1166067 (Del. Ch. Mar. 11, 2020).

[29] *Id.*, at *3.

SourceHOV has now repackaged its Reargument Motion as a Motion for New Trial.  It argues, "the 16,840 RSUs that were vested [(but unsettled)] as of the [Merger] should have been included in the share count."[30]  Apparently,

> [i]n reviewing the Court's [O]pinion, [SourceHOV] discovered that the share count, which was based on the fully diluted number of shares presented in public filings, did not include vested [but unsettled] RSUs. Under applicable accounting rules, the vested [but unsettled] RSUs were not included in the fully diluted number of shares because Respondent was operating at a loss.[31]

SourceHOV "believes that neither party and neither expert realized that [unsettled] RSUs were not included in the share count."[32]  In other words, SourceHOV maintains that both experts failed to read the "applicable accounting rules" when making their presentations to the Court.[33]

In support of this assertion, SourceHOV points to the post-Merger track of the 24,535 RSUs that were outstanding as of the Merger.  According to SourceHOV, all

---

[30] Motion at 3.

[31] *Id.* at 2.

[32] Reply at 5.

[33] Motion at 2.

of these RSUs went on to settle into outstanding shares of the Company's successor entity's stock after the Merger.[34] These RSUs settled in two "tranches," one in 2018 (well in advance of trial) and the other in October and November 2019.[35] To explain why it did not offer this evidence at trial, SourceHOV maintains it *could not* have presented the "totality" of its "new" evidence because some RSUs are still in the process of settling even "during the pendency of this motion."[36]

## II. ANALYSIS

Court of Chancery Rule 59(a) provides, "[a] new trial may be granted to all or any of the parties, and on all or part of the issues for any of the reasons for which rehearings have heretofore been granted in suits in equity."[37] Whether to grant a new trial lies in the discretion of the trial court.[38] In this regard, Delaware law directs

---

[34] *Id.* at 2–3.

[35] *Id.* at 8.

[36] *Id.* at 3.

[37] Ct. Ch. R. 59(a).

[38] *Zutrau v. Jansing*, 2014 WL 6901461, at *4, n.31 (Del. Ch. Dec. 8, 2014).

the trial court to exercise its discretion with the end goal of avoiding injustice in

mind.[39]  While the discovery of new evidence can, under narrow circumstances,

entitle a party to a new trial,

> [n]ew trials on the ground of newly discovered evidence are not
> favored.  Such disfavor stems from the recognition that while every
> litigant is required to make "the fullest possible preparation of his case
> before trial . . . disappointment over the result [frequently] spurs the
> applicant to that diligence which he should have exercised before trial."
> For that reason the movant must provide "strict affirmative proof of
> diligence," and the operative question is "not what the [movant] knew,
> but what, using reasonable diligence, he might have known."[40]

Even where a party claims, post-trial, that it has discovered "practically

conclusive evidence" that would contradict a final judgment of this court, that

discovery will not entitle the party to relief under Rule 59 if the new evidence

"concededly could have been presented earlier had the moving party been [more]

---

[39] *Id.*

[40] *Cole v. Kershaw*, 2000 WL 1336724, at *2 (Del. Ch. Sept. 5, 2000) (quoting *In re Missouri-Kansas Pipe Line Co.*, 2 A.2d 273, 277, 281 (Del. 1938)) (alteration in original).

diligent."[41]   Moreover, the new evidence "must be material and not merely cumulative and must be likely to have changed the outcome of the trial."[42]

SourceHOV has not shown the manifest injustice necessary to justify a new trial for two reasons.  *First*, the "new" evidence SourceHOV has identified does not contradict or undermine Meinhart's opinion and, thus, is not likely to change the outcome of trial.[43]  I understand the main thrust of SourceHOV's argument to be that because the Company's RSUs did, in fact, settle into outstanding shares after the Merger, the "uncertainty" that Meinhart identified at trial "can now be resolved."[44] This reasoning misses the point that Meinheart's opinion was based upon the

---

[41] *Ross Sys. Corp. v. Ross*, 1994 WL 198718, at *2 (Del. Ch. May 9, 1994) (citing *Sussex Poultry Co., Inc. v. Am. Ins. Co.*, 301 A.2d 281, 283 (Del. 1973)) ("In Delaware, a motion for a new trial will normally be denied where the moving party fails to show that by exercising reasonable diligence it could not have discovered the evidence before trial."); *see also Kent 1A LLC v. Sternberg*, 2013 WL 5330834, at *1 (Del. Ch. Sept. 23, 2013) ("The movant must show that the newly discovered evidence has come to his knowledge since the trial, and that it could not, in the exercise of reasonable diligence, have been discovered for use at the trial.") (internal quotation omitted).

[42] *Kent 1A*, 2013 WL 5330834, at *1 (internal quotations omitted).

[43] *Manichaean Capital*, 2020 WL 496606, at *26.

[44] Motion at 5.

Company's "operative reality"—including relevant uncertainties—as of the time of the Merger.[45]  The post-Merger fate of the RSUs was, by definition, not "knowable as of the Business Combination."[46]  Indeed, in the Motion, SourceHOV concedes that unsettled RSUs are still subject to forfeiture upon a for-cause termination.[47]  Accordingly, SourceHOV's new evidence does not contradict the basis for Meinhart's opinion.  That is, at the time of the Merger, it was speculative whether RSUs (whether unvested or unsettled) would "dilute the holdings of existing stockholders."[48]

*Second*, nothing would have prevented SourceHOV from presenting most of its "new" evidence at trial.  I struggle to understand what prevented the Company from identifying the applicable accounting rules related to unsettled RSUs and presenting evidence of the RSUs' likely post-Merger "settlement" into outstanding

---

[45] *Manichaean Capital*, 2020 WL 496606, at *26–27.

[46] *Id.*, at *27.

[47] Motion at 6.

[48] *Manichaean Capital*, 2020 WL 496606, at *26.

shares. This is especially true because the Company had already issued the RSUs and possessed the relevant records. For example, in the Motion, SourceHOV has compiled a chart showing that the Company's unvested RSUs gradually vested from 2014 to 2019.[49] To provide support for the numbers in the chart, SourceHOV cites to (i) documents that have already been admitted in evidence and (ii) the Company's public filings in 2018 and 2019.[50] This information was available to SourceHOV before the June 4, 2019 trial date.[51] The same can be said for the "April 2019 Cap Table" SourceHOV relies upon to demonstrate that unsettled RSUs have now "settled" into outstanding shares.[52]

In an effort to buff out a "new" shine on this evidence, SourceHOV points to outstanding RSUs that did not settle until "late 2019."[53] But this supposedly new

---

[49] Motion Ex. A.

[50] *Id.*

[51] D.I. 89; Motion at 8–9 (describing the 2018 and 2019 settlement of unsettled RSUs).

[52] Motion at 8.

[53] *Id.* at 9.

evidence is merely "cumulative" of other evidence that the first tranche of RSUs settled in 2018.[54] As such, the supposed unavailability of this 2019 vesting evidence at trial is an insufficient basis to ask the Court to re-open the trial record.

SourceHOV concedes that "some" of this "new" evidence regarding RSUs "existed before trial, but was not presented because [SourceHOV] did not think the inclusion of vested [(but unsettled)] RSUs in the share count was a contested issue— it was never surfaced by any party in depositions or briefs, or at trial or during hearings."[55] Stated differently, it appears SourceHOV now wishes it had made a separate argument concerning unsettled RSUs, rather than merely focusing on unvested RSUs, during its trial presentations.[56] This type of strategic second-guessing is not a basis for a new trial under Delaware law.

---

[54] *Hicks v. State*, 913 A.2d 1189, 1194 (Del. 2006) (stating "cumulative" evidence does not amount to new evidence that would justify a new trial); 66 C.J.S. *New Trial* § 179 (2020) ("[C]umulative evidence may be defined as additional evidence of the same kind to the same point.").

[55] Motion at 11.

[56] *Manichaean Capital*, 2020 WL 496606, at *26 (noting the parties' dispute concerning RSUs). SourceHOV's position at trial was that the stock count should have been 166,136,

A careful reading of the Motion reveals that what is really "new" here is not the evidence of unsettled RSUs' post-Merger conversion into outstanding shares, but the Company's "discover[y]" of Accounting Standards Codification 260 ("ASC 260").[57] According to SourceHOV, ASC 260 directs companies (such as SourceHOV) that are operating at a loss to exclude unsettled RSUs from their outstanding share counts.[58] Even if SourceHOV is correct that *if* both experts had focused on ASC 260, *then* they would have agreed to include unsettled RSUs in the share count, I see nothing that would have prevented SourceHOV from directing its expert to address the issue, or otherwise making this argument, at trial. As such, I cannot conclude that SourceHOV has provided the "affirmative proof of diligence" that would be required to grant the Motion.[59]

---

based on 157,249 outstanding shares and 8,887 "Restricted Stock Units." Jarrell Rept. at 97; JX 346 at 61.

[57] Motion at 2–4.

[58] *Id.* at 4.

[59] *Cole*, 2000 WL 1336724, at *2 (requiring a movant to provide "strict affirmative proof of diligence" before awarding relief under Rule 59).

For the foregoing reasons, the Motion must be DENIED.[60]

**IT IS SO ORDERED.**

                Very truly yours,

                */s/ Joseph R. Slights III*

---

[60] In their opposition to the Motion, Manichaean has asked that I require SourceHOV to pay its attorney's fees incurred in responding to the Motion. *See* Pet'rs' Opp'n to Resp't's Mot. for a New Trial (D.I. 119) at 11. Manichaean's request must be denied as I am satisfied Respondent's filing of the Motion falls well short of the "bad faith conduct" that would warrant an award of attorney's fees. *See Beck v. Atlantic Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005) (stating that Delaware courts will award attorney's fees only "where parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims").